900 So.2d 301 (2005)
MARTINEZ MANAGEMENT, INC. and Jack Gamble, Plaintiffs-Appellees,
v.
Deborah L. CASTON and Community of Acquets and Gains Shared With Lawrence Caston, Defendants-Appellants.
No. 39,500-CA.
Court of Appeal of Louisiana, Second Circuit.
April 13, 2005.
*303 Wiener, Weiss & Madison by M. Allyn Stroud, for Appellants.
Rogers, Hearne & Carter by E. Keith Carter, for Appellees.
Before WILLIAMS, PEATROSS & DREW, JJ.
PEATROSS, J.
This civil action arises out of the allegation that Deborah Caston, former bookkeeper and secretary to Plaintiff Jack Gamble ("Gamble") and bookkeeper for Plaintiff Martinez Management, Inc. ("MMI"), misappropriated or converted funds in bank accounts belonging to Gamble and MMI.
Jack and Carol Gamble are 50 percent owners of MMI, with A.T. Martinez and Nanette Martinez (through AT & N Martinez Land Co., L.L.C.) owning the remaining 50 percent. Gamble and MMI sued Mrs. Caston, also naming as a defendant her husband, Lawrence Caston, alleging that his community share is liable for Mrs. Caston's alleged acts. The Castons' financial accounts were sequestered and Mrs. Caston also faced felony charges for the alleged conversion. Due to the pendency of the criminal case, Mrs. Caston's criminal defense counsel advised her civil counsel that she should not testify on her own behalf in the civil trial and should invoke the Fifth Amendment right against self-incrimination should she be compelled to testify. The Castons then filed a motion to stay the civil trial, which was denied. This court denied writs on that ruling, as did the supreme court.[1] The civil case proceeded to trial and Mrs. Caston invoked her Fifth Amendment right. At the conclusion of the civil trial, judgment *304 was rendered in favor of the plaintiffs in the aggregate amount of $628,705.89, plus legal interest. The Castons filed this devolutive appeal.
On appeal, the Castons assert three assignments of error concerning the denial of the motion to stay, denial of an exception of prescription and challenging the quantum of damages. For the reasons set forth herein, we affirm.

FACTS
Mrs. Caston worked for Gamble for approximately 22 years as a bookkeeper and secretary. Her job duties for Gamble included issuing checks on and reconciling three accounts that belonged to him, including a "Law Office Account," "Client Trust Account" and his personal bank account. As bookkeeper for MMI, Mrs. Caston's duties included issuing checks and reconciling MMI's checking account, plus receiving rental payments from tenants of an apartment complex owned by MMI and paying fees and expenses of the apartment complex as well as providing financial information to MMI's accountant for tax return preparation. Beginning in 1998, Mrs. Caston began issuing checks without authorization from the various accounts described above, in some cases cashing the checks and in other cases moving funds between the accounts. Mrs. Caston continued to convert funds of Gamble and MMI until her activity was discovered by Gamble in July 2002. The instant suit was filed on August 21, 2002.
Mrs. Caston's deposition, taken in October 2002, was introduced at trial; however, as previously stated, she exercised her Fifth Amendment right not to testify at the trial. Copies of checks and check stubs were introduced attached to affidavits of Gamble and Nanette Martinez. The parties stipulated that the copies of the checks and stubs were true and accurate copies.
The Castons do not challenge on appeal that Mrs. Caston did, in fact, convert funds and issue unauthorized checks from the various Gamble and MMI accounts. The issues raised in the Castons' appeal are set forth in the following assignments of error (verbatim):

Assignment of error number 1: The trial court erred by denying Defendants' motion to stay the civil proceeding due to the pendency of the criminal charges against Deborah Caston.

Assignment of error number 2: The trial court erred by denying Defendants' peremptory exception of prescription.

Assignment of error number 3: The trial court erroneously calculated the amount due and allowed plaintiffs double recovery for the same alleged loss.

DISCUSSION

Prescription
We will first address assignment of error number two, challenging the trial court's denial of the Castons' exception of prescription. The Castons argue that the trial judge committed legal error in holding that a ten-year prescriptive period applies to Gamble's and MMI's claims in this case rather than the one-year prescriptive period for delictual actions. Further, with the one-year period applicable, the Castons assert that Gamble had knowledge that something was wrong with his accounts, i.e. possible unethical activity, by Mrs. Caston as early as 1997. They argue that both Gamble and MMI failed to use reasonable diligence in monitoring the activity and reconciliation of the various accounts involved and that a simple check of the accounts would have alerted them that there was questionable activity occurring. For these reasons, the Castons assert that *305 the one-year prescriptive period should start running anew with each alleged unauthorized transaction; therefore, a major portion of the claimed damages have prescribed. They further assert that the doctrine of contra non valentem does not operate to preclude the running of prescription on Gamble's and MMI's claims. We disagree.
First, we conclude that Mrs. Caston owed a fiduciary duty to Gamble and MMI; a duty of loyalty and fidelity arising out of the employment contract between her and Gamble and as an independent contractor of MMI. See Odeco Oil & Gas Co. v. Nunez, 532 So.2d 453 (La.App. 1st Cir.1988), writ denied, 535 So.2d 745 (La. 1989); Cenla Physical Therapy & Rehabilitation Agency, Inc. v. Lavergne, 94-1538 (La.App. 3d Cir.5/3/95), 657 So.2d 175. Second, we conclude that Mrs. Caston was a mandatary for Gamble as well as his employee. Id. In ODECO, supra, the court recognized that, while, generally, a mandate is distinguishable from the master/servant relationship in that a mandate can be gratuitous, an employee may also be the mandatary of the employer where the employee is authorized to act on behalf of the employer as principal. The court further explained that the mandatary owes the principal a duty of fidelity. Such is the case here, where Mrs. Caston was Gamble's employee, but was also authorized to act on his behalf in managing his financial affairs, including issuing checks and reconciling his various bank accounts. Likewise, Mrs. Caston was a mandatary for MMI as she was authorized to issue checks and reconcile its bank accounts.
In summary, Mrs. Caston owed Gamble and MMI a duty of loyalty and fidelity and, therefore, she had a fiduciary duty in discharging her responsibilities arising out of the contractual, employment and mandate relationships. These personal actions are subject to a prescriptive period of ten years. La. C.C. art. 3499. As such, we find no legal error in the trial court's conclusion in this regard.
Assuming, arguendo, however, that the one-year prescriptive period for delictual actions applies,[2] we conclude that the doctrine of contra non valentem would have operated in this case to interrupt the prescription of Gamble's and/or MMI's claims. La. C.C. art. 3492 provides that the one-year prescription period for delictual actions begins to run from the date the injury or damage is sustained. Damage is considered to have been sustained, within the meaning of article 3492, only when it has manifested itself with sufficient certainty to support accrual of a cause of action. Cole v. Celotex Corp., 620 So.2d 1154 (La.1993).
Prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort. Campo v. Correa, 01-2707 (La.6/21/02), 828 So.2d 502. An injured party has constructive notice of his condition when he possesses information sufficient to incite curiosity, excite attention or put a reasonable person on guard to call for inquiry. Boyd v. B.B.C. Brown Boveri, Inc., 26,889 (La.App.2d Cir.5/10/95), 656 So.2d 683, writ not considered, 95-2387 (La.12/8/95), 664 So.2d 417.
*306 In order to soften the occasional harshness of prescriptive statutes, our courts have recognized the jurisprudential exception to prescription of contra non valentem non currit praescriptio, which means that prescription does not run against a person who could not bring his suit. Harvey v. Dixie Graphics, Inc., 593 So.2d 351 (La.1992). The doctrine of contra non valentem acts as an exception to the general rules of prescription by suspending the running of prescription when the circumstances of the case fall into one of four categories. Under the fourth category, contra non valentem is applied when a cause of action is not known or reasonably knowable by the plaintiff even though his ignorance is not induced by the defendant. Renfroe v. State ex rel. Dept. of Transp. and Development, 01-1646 (La.2/26/02), 809 So.2d 947; Wimberly v. Gatch, 93-2361 (La.4/11/94), 635 So.2d 206. This fourth category is commonly known as the discovery rule and it provides that prescription commences on the date the injured party discovers or should have discovered the facts upon which his cause of action is based. Id. For the fourth category to apply, the plaintiff's ignorance of his cause of action cannot be attributable to his own willfulness or neglect; a plaintiff is deemed to know what he could have learned by reasonable diligence. Renfroe, supra.
Constructive knowledge sufficient to start the running of prescription, however, requires more than mere apprehension that something might be wrong. National Union Fire Ins. Co. of Pennsylvania v. Spillars, 552 So.2d 627 (La.App. 2d Cir.1989), writs denied, 556 So.2d 61 (La.1990), citing Cordova v. Hartford Acc. & Indem. Co., 387 So.2d 574 (La.1980). Further, prescription does not run if the "defendant has concealed information or misled and lulled the plaintiff into inaction." National Union Fire Ins. Co. of Pennsylvania, supra, citing Brown v. State, Through Dept. of Corr., 354 So.2d 633 (La.App. 1st Cir.1977).
In the case sub judice, Gamble testified that, in 1997, he became aware that Mrs. Caston had been depositing money into his account from sources unknown to him. At that time, Mrs. Caston told Gamble that she was trying to conceal money from her allegedly abusive husband in order that she would have money if and when she decided to leave him. Mr. Gamble testified that he believed this unfortunate story and accepted it as true. On this belief, he continued Mrs. Caston's employment and continued his trust in her that she was managing his bank accounts honestly. It was not until an investigation in 2002 revealed Mrs. Caston's actions and resulted in her arrest that Gamble acquired knowledge of Mrs. Caston's long-term scheme to misappropriate monies from his and MMI's bank accounts. Within one month of Mrs. Caston's actions being discovered, the instant suit was filed.
We find no merit in Mrs. Caston's argument that Gamble's and MMI's failure to monitor the bank accounts at issue constitutes a lack of reasonable diligence with respect to these accounts. Mrs. Caston was a trusted employee of Gamble's for more than two decades, during which she had full and complete responsibility for managing these accounts. Other than the brief incident in 1997 regarding her depositing her own money into a Gamble account, allegedly to hide the money from her husband, Gamble had no reason to question Mrs. Caston's honesty and integrity where her job responsibilities were concerned. The same is true for MMI. Finding no evidence to the contrary in this record, we conclude that the instant suit was timely filed as it was filed just weeks after Mrs. Caston's actions came to light.

*307 Motion to Stay the Civil Suit

In assignment of error number one, the Castons urge this court to revisit the propriety of the trial court's ruling denying their motion to stay the civil proceeding due to the pendency of the criminal matter. The Castons twice attempted to have the civil trial stayed for this reason, but the criminal trial was continued several times during the interim and the trial judge ultimately denied the Castons' second motion to stay the civil trial. In this court's denial of the Castons' application for supervisory writ review, we stated that there was "no palpable error" found in the trial court's ruling. The supreme court subsequently denied writs.
We find the above ruling to be the law of the case on the issue of the stay. The law of the case doctrine is a discretionary guide which relates to (a) the binding force of a trial judge's ruling during the later stages of trial, (b) the conclusive effects of appellate rulings at trial on remand and (c) the rule that an appellate court ordinarily will not reconsider its own rulings of law on a subsequent appeal in the same case. Northeast Realty v. Jackson, 36,276 (La.App.2d Cir.8/14/02), 824 So.2d 1264, citing Glenwood Hosp., Inc. v. Louisiana Hospital Service, Inc., 419 So.2d 1269 (La.App. 1st Cir.1982). Reargument in the same case of a previously decided point will be barred where there is simply a doubt as to the correctness of the earlier ruling. Only where there is palpable error or where, if the law of the case was applied, manifest injustice would occur, is the doctrine not applied. Northeast Realty, supra; Glenwood Hosp., Inc., supra.
The reasons for the law of the case doctrine are to avoid relitigation of the same issue, to promote consistency of result in the same litigation and to promote efficiency and fairness to both parties by affording a single opportunity for the argument and decision of the matter at issue. Will Drill Resources, Inc. v. Huggs, Inc., 36,797 (La.App.2d Cir.1/29/03), 836 So.2d 1211; Northeast Realty, supra, citing Day v. Campbell Grosjean Roofing and Sheet Metal Corporation, 260 La. 325, 256 So.2d 105 (1971); Louisiana Land and Exploration Co. v. Verdin, 95-2579 (La.App. 1st Cir.9/27/96), 681 So.2d 63, writ denied, 96-2629 (La.12/13/96), 692 So.2d 1067, cert. denied, 520 U.S. 1212, 117 S.Ct. 1696, 137 L.Ed.2d 822 (1997).
As stated, on our writ review of the issue of a possible stay of the civil proceedings, we concluded that there was no palpable error in the trial court's denial of the motion. On this, our second review of this issue, and, mindful that the supreme court also denied writs on this issue, we, again, find no palpable error in the denial of the motion to stay and see no resulting manifest injustice if the doctrine of law of the case is applied to this ruling.
We are cognizant, however, that, as an interlocutory ruling, the refusal of this court to exercise our supervisory writ review power may not necessarily preclude a second review of the issue on appeal from the final judgment. See Coldwell Banker J. Wesley Dowling and Associates, Inc. v. City Bank and Trust of Shreveport, 25,684 (La.App.2d Cir.3/30/94), 634 So.2d 959. With this in mind, a review of the entire record in this case leads us to conclude that, even if the law of the case doctrine is not applied, there is no error in the trial court's ruling.
Much of the Castons' argument advocating that a stay of the civil trial should have been issued focuses on the fact that Mrs. Caston was forced to invoke her Fifth Amendment right against self-incrimination in the civil trial which hampered *308 her ability to present a full defense. In fact, several of the cases cited by the Castons (none of which we note are Louisiana cases, but, rather, are federal cases) involve requested stays of depositions when parallel criminal litigation is pending. In this regard, we find significant that Mrs. Caston gave a deposition in the civil matter which was introduced in the civil trial as was an affidavit executed by her for purposes of defending the civil matter. In addition, Mrs. Caston provided a voluntary statement to investigators in the criminal matter. While she did invoke her Fifth Amendment right during the trial, we do not find that her defense was unduly hindered by this strategical decision. Moreover, we acknowledge that any prejudice that may have resulted from the civil trial proceeding, if it did, was minimal and, in any event, could not be remedied at this late stage. In the face of several continuances occurring in the criminal proceeding and in light of the deposition testimony, voluntary statement to investigators and affidavit provided by Mrs. Caston, a balancing of interests in allowing the civil litigant a timely remedy and minimizing any potential prejudice to a civil and criminal defendant arising from litigating the civil matter prior to the criminal trial weighs in favor of allowing this civil matter to proceed. We find no palpable error in this ruling.

Damages
As previously mentioned, the Castons do not dispute the finding of liability in this case; however, they argue that the trial court's award of damages erroneously allows for double recovery on numerous individually identified checks and/or transfers of money. Specifically, the Castons assert that, in many instances, the check at issue was drawn on MMI's bank account and deposited into an account owned by Gamble. According to the Castons, to allow both Gamble and MMI recovery for money transferred between their bank accounts is to allow double recovery for the same alleged loss. Further, the Castons argue that several checks were drawn on one of the three accounts owned by Gamble and deposited into one of the remaining two accounts owned by Gamble, with no evidence of those specific funds ever being withdrawn by Mrs. Caston and converted to her personal use. The Castons assert that it was error to allow recovery for these transactions.
Gamble and MMI respond by emphasizing the trial court's thorough and specific recitation of the evidence supporting the damage award and its recognition of the detailed testimony supporting each individual unauthorized check and/or transaction. Most significantly, Gamble and MMI point out that Mrs. Caston moved money among the various accounts in order to conceal her activity. She then drew checks on the accounts payable to herself or to Gamble and endorsed by her. There is evidence in the record that Mrs. Caston paid certain credit card bills with this money as well as making large dollar-amount purchases during the time she was engaged in this fraudulent activity. In particular, there was ample evidence of Mrs. Caston spending above her means (her salary was approximately $22,000 per year), including testimony from a local jeweler that she bought and paid cash for jewelry valued at approximately $40,000. Further, Mr. Gamble asserts that he had to deposit approximately $200,000 into his accounts to balance them after Mrs. Caston's scheme was discovered. In addition, Mrs. Caston owned a joint, out-of-state bank account with her sister in which she deposited money and out of which her sister withdrew money, for which no deposit slips or cancelled checks were produced.
*309 Regarding the double recovery argument, Gamble and MMI acknowledge that some of the checks at issue were transfers between Gamble's accounts; however, they point out that, although the documentation reflects certain amounts moving out of one account and into another, there were also excessive withdrawals from the account into which that money was deposited. Gamble and MMI assert that the end result is a complex and deceptive scheme of moving funds to cover unauthorized withdrawals and there simply is not definitive evidence of the path that each and every misappropriated dollar took in making its way into Mrs. Caston's hands. For these reasons, Gamble and MMI argue that the trial court's award of damages equaling the total of the individual unauthorized checks drawn on the accounts was proper. We agree.
Much discretion is left to the fact finder in the assessment of damages in cases of offenses and quasi-offenses and quasi-contracts. See La. C.C. art. 2324.1; National Union Fire Ins. Co. of Pennsylvania, supra. If the damages are susceptible of precise measurement, the court's discretion is circumscribed and damages will be measured by the loss sustained. La. C.C. art.1999, 1995; National Union Fire Ins. Co. of Pennsylvania, supra, and cases cited therein. In the case sub judice, the trial court heard the following testimony as to each check included in its damage award: (1) the date of the check (2) the check number, (3) the dollar amount, (4) the payee on the check, (5) the payee entered on the check stub, (6) the dollar amount entered on the check stub and (7) whether the check was cashed by Mrs. Caston or deposited into an account. There was also uncontroverted testimony that each check was unauthorized, drawn without the knowledge or consent of Gamble or MMI and that neither Gamble nor MMI received any benefit from any of the checks. The trial court credited and accepted this testimony and simply added up the total of unauthorized checks written on the three Gamble accounts and the MMI account. The trial court correctly noted the absence of any evidence to the contrary and we find no error in the judgment awarding damages in the amounts of the unauthorized checks written on the various accounts at issue.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of appeal are assessed to Defendant/Appellants, Deborah L. Caston and Community of Acquets and Gains Shared with Lawrence Caston.
AFFIRMED.
DREW, J., concurs in part and dissents in part, with written reasons.
DREW, J., concurring in part, and dissenting in part.
While I agree with the findings of the majority pertaining to the denial of the motion to stay, as well as the issue of prescription, I must respectfully dissent as to their affirming the learned trial court's computation of the damages.
Plaintiffs were awarded $628,705.89, plus legal interest. Mr. Gamble testified that he had to come up with about $200,000.00 in order to balance his accounts. The corporation also suffered a large loss, but the numbers don't add up to the amount of the judgment.
The majority seems to acknowledge that some monies may have been counted twice, but they accept this, apparently because of Mrs. Caston's unquestionably terrible conduct in violating the trust of plaintiffs. These damages are susceptible of precise measurement.
*310 The better course of action would be to remand for the computation of the actual sums lost, as opposed to the sums transferred from account to account. Testimony of a forensic accountant could establish the amount of purloined sums to the penny. Then justice would be done.
This lady violated our criminal laws, but the judgment should be the actual amount the plaintiffs lost. Therefore, I respectfully dissent to this portion of the majority's otherwise well-crafted opinion.
NOTES
[1] Mrs. Caston's criminal trial was held after the civil trial. Mrs. Caston testified on her own behalf and was acquitted on the felony theft charges; however, by responsive verdict, she was convicted of two counts of unauthorized use of a movable.
[2] See National Union Fire Ins. Co. of Pennsylvania v. Spillars, 552 So.2d 627 (La.App. 2d Cir.1989), writs denied, 556 So.2d 61 (La. 1990), where this court applied the one-year prescriptive period for delictual actions to an insurance company's action to recover proceeds paid to its insured on a policy against embezzlement claim against the insured's employee.