957 So.2d 362 (2007)
STATE of Louisiana, through the LOUISIANA DEPARTMENT OF EDUCATION  FOOD SERVICE, Plaintiff-Appellee
v.
BRIGHT BEGINNINGS CHILD CARE, INC. a/k/a Bright Beginnings Child Care and Pre-School and Margareta Escher Steed a/k/a Margareta E. Steed, Defendant-Appellant.
No. 42,146-CA.
Court of Appeal of Louisiana, Second Circuit.
May 16, 2007.
*363 Kammer & Huckabay, by Charles H. Kammer, III, Shreveport, for Appellant.
Charles C. Foti, Jr., Attorney General, Charlene Patterson, Michael F. Miley, Assistant Attorney Generals, for Appellee.
Before BROWN, GASKINS and MOORE, JJ.
GASKINS, J.
In this suit involving overpayments from a food service program to a child care facility, the defendants appealed from a trial court ruling granting summary judgment in favor of the State of Louisiana. They also filed an exception of prescription asserting that some of the claims against them had prescribed. We deny the exception of prescription in part and grant it in part. However, we reverse the trial court judgment granting summary judgment and remand the matter to the trial court for further proceedings.

*364 FACTS
On October 27, 2005, the State of Louisiana, through the Department of Education (DOE), filed a petition to recover overpayments made to Bright Beginnings Child Care, Inc., a/k/a Bright Beginnings Child Care and Pre-school, and its president, Margareta Marie Escher Steed, a/k/a Margareta E. Steed, for participating in the Child and Adult Care Food Program (CACFP). The petition alleged the following facts and supplied attached documentation. Pursuant to an agreement executed in 1992, the defendants agreed to operate a food service program for children and adults in non-residential institutions. According to the petition, an audit was conducted in September 1997 of Bright Beginnings' program for the "period beginning September 30, 1995,"[1] and for the three-month period ending December 31, 1995, and it allegedly indicated that overpayments were made. Notice of the overpayment, a request for payment, and a notice of appeal process were sent to the defendants in April 1998; they requested an appeal in May 1998. Eventually the matter was scheduled to go before an administrative law judge; however, the hearing request was ultimately withdrawn by the defendants. A second demand letter was sent to the defendants in August 1999. The matter was referred to the Louisiana Department of Justice (DOJ) for collection. Demand letters were sent by the attorney general's office in January 2001, July 2001, and August 2001, seeking $35,590.98. Although the defendants disputed the amount owed by letter in November 2001 and October 2002, they failed to submit an audit.
In the alternative, should the Bright Beginnings corporation be found not to be the party who contracted to operate the food service program, DOE alleged in its petition that Ms. Steed willfully or fraudulently applied for and received CACFP funds. The plaintiff alleged that Ms. Steed committed "deliberate acts to defraud" and that these were personal actions for which she was personally liable.
On December 2, 2005, the defendants filed a general denial.
In March 2006, the plaintiff filed a motion for summary judgment. Attached to the motion was an affidavit by Mary L. Benoit, the IT database analyst in the DOJ Collections Section, who attested to her familiarity with the defendant's account and stated that the amount owed was $35,590.98, together with legal interest from date of judicial demand, until paid, plus attorney fees pursuant to the contract between DOE and DOJ in the amount of 33.33 percent of the principal and interest and all court costs.
In opposition to the motion for summary judgment, the defendants submitted a copy of the audit, an affidavit from Ms. Steed in which she stated that accurate monthly reports were submitted to the state reflecting the meals provided to children at the daycare center and the level of benefits each child was entitled to receive, and copies of those reports from March 1995 to December 1995. In their memorandum in opposition, the defendants asserted that review of the plaintiff's own audit showed that, at most, the overpayment to the defendants was only $3,998.97. They also alleged that Louisiana's 10-year prescriptive period set forth in La. C.C. art. 3499 was applicable. As a result, when suit was filed October 27, 2005, they *365 contend that most of the claims had prescribed.
The plaintiff responded to the opposition, stating that the amount it alleged to be owed was supported by an audit for a specific period of time and that the findings were then "projected out" for a full year of the agreements. It also noted that the defendants were given ample time to produce their own records and/or audit to dispute the amount owed prior to suit being filed. The plaintiff further asserted that prescription had not run due to the post-Katrina suspensions of prescription. In addition to copies of the Louisiana governor's executive orders suspending prescription, it also attached a letter between DOE and DOJ setting forth the amount of attorney fees for DOJ's collections for DOE.
On June 5, 2006, the trial court denied the motion for summary judgment. However, that same day, the plaintiff filed an affidavit from John Dupre, the director of the division of nutrition assistance for DOE, verifying the facts as alleged in the petition and the motion for summary judgment, including the amount of $35,590.98 as the outstanding balance owed. On June 6, 2006, the motion was recalled for argument and, based on the affidavit, summary judgment was granted. Judgment was rendered against Bright Beginnings Child Care, Inc., a/k/a Margareta Marie Escher Steed, in the amount of $35,590.98, together with legal interest from the date of judicial demand until paid, plus attorney fees pursuant to the contract between DOJ and DOE in the amount of 33.33 percent of the principal and interest and all costs of court.
Bright Beginnings Child Care, Inc., and Margareta Marie Escher Steed filed a devolutive appeal in September 2006. In January 2007, they filed an exception of prescription in the appellate court, which was ordered deferred to the merits of the appeal.

PRESCRIPTION
Under the provisions of La. C.C.P. art. 852, the pleadings allowed in civil actions shall be in writing and shall consist of petitions, exceptions, written motions, and answers. Consequently, an exception of prescription should be in the form of a written pleading. In the instant case, no exception of prescription was filed in the trial court; the issue was simply raised in the opposition to the motion for summary judgment. The trial court made no specific finding on the issue of prescription. However, the defendants filed an exception of prescription in this court, pursuant to La. C.C.P. art. 2163, and the plaintiff has not requested that the matter be remanded to the trial court for determination. Therefore, the issue is properly before this court.
The plaintiff argues that it is not subject to prescription under the provisions of La. Const. art. 12, § 13, which states: "Prescription shall not run against the state in any civil matter, unless otherwise provided in this constitution or expressly by law." However, the Department of Education is created and shall be a body corporate with the power to sue and be sued. La. R.S. 36:642. As such, the Department of Education is a distinct legal entity subject to claims of prescription. State through Governor's Special Commission on Education Services v. Dear, 532 So.2d 902 (La.App. 5th Cir.1988). See State, Through Department of Highways v. City of Pineville, 403 So.2d 49 (La.1981).
We conclude that the appropriate prescriptive period for the instant case is found in La. C.C. art. 3499, which provides: "Unless otherwise provided by legislation, a personal action is subject to a *366 liberative prescription of ten years." Suit was filed on October 27, 2005. The defendants argue that under the 10-year prescriptive period, the only portions covered by the audit which had not prescribed by the time suit was filed were October through December 1995.
We note that the occurrences of Hurricanes Katrina and Rita in August and September of 2005 led to suspensions of prescription in Louisiana. Subsequently the Louisiana Legislature enacted La. R.S. 9:5821, which ratified the governor's executive orders, and La. R.S. 9:5822, which provided for a limited suspension of prescription during the time period of August 26, 2005, through January 3, 2006, due to the hurricanes. See Fox Electric, L.L.C. v. Moghimi, 41,197 (La.App.2d Cir.9/20/06), 939 So.2d 604.
Applying the 10-year prescriptive period of La. C.C. art. 3499 and taking into consideration the hurricane-related suspensions of prescription, we find that the portions of the audit covering August 26, 1995, to December 31, 1995, have not prescribed. However, the portions covered by the audit on or before August 26, 1995, have prescribed.[2]
The defendants also argue that the claim against Ms. Steed alleging fraudulent conduct falls under the one-year prescriptive period of La. C.C. art. 3492. Fraud is a tort, which is governed by the liberative prescription of one year. Bell v. Demax Management Inc., XXXX-XXXX (La. App. 4th Cir.7/24/02), 824 So.2d 490. La. C.C. art. 3492 provides that the one-year prescription period for delictual actions begins to run from the date the injury or damage is sustained. Damage is considered to have been sustained, within the meaning of article 3492, only when it has manifested itself with sufficient certainty to support accrual of a cause of action. Cole v. Celotex Corp., 620 So.2d 1154 (La. 1993); Martinez Management, Inc. v. Caston, 39,500 (La.App.2d Cir.4/13/05), 900 So.2d 301. The petition asserts that an audit was done in 1997 which showed alleged overpayments in 1995 and that Ms. Steed committed "deliberate acts to defraud" apparently in connection with these 1995 overpayments. In view of the fact that the law suit was not filed until 2005, the fraud claims against her are prescribed on the face of the petition.
We grant the exception of prescription in part and deny it in part.

SUMMARY JUDGMENT

Law
Appellate courts review summary judgments de novo using the same criteria that govern a district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991); Jones v. Estate of Santiago, XXXX-XXXX (La.4/14/04), 870 So.2d 1002.
A motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). Summary judgment procedure is designed to secure the "just, speedy, and inexpensive determination of every action." La. C.C.P. art. 966(A)(2); Jones v. Estate of Santiago, supra. In 1997, the legislature enacted La. C.C.P. art. 966(C)(2) which clarified the burden *367 of proof in summary judgment proceedings. The initial burden of proof remains with the mover to show that no genuine issue of material fact exists. If the mover has made a prima facie showing that the motion should be granted, the burden shifts to the nonmoving party to present evidence demonstrating that a material issue remains. The failure of the nonmoving party to produce evidence of a material factual dispute mandates the granting of the motion. Jones v. Estate of Santiago, supra.
Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. La. C.C.P. art. 967(A).

Discussion
In its motion and order for leave to file a response to the defendants' opposition, the plaintiff stated the following:
2.
With regard to the amount owed as alleged by the Petitioner and supported by an audit previously submitted as Exhibit A, the Petitioner would respond that the audit was . . . for a specific period of time and the findings [were] then projected out for a full year of the agreements. Moreover, the Defendants were given ample time to provide their own records and/or audit to dispute the amount [owed] prior to the commencement of the captioned matter. [Emphasis added]
The plaintiff submitted affidavits from Mary L. Benoit, the IT database analyst in the DOJ Collections Section, and John Dupre, the director of the division of nutrition assistance for DOE, in which each asserted that the amount owed is $35,590.98. Ms. Benoit states that she was familiar with the account of the defendant and the amount of overpayment still outstanding. Mr. Dupre states that, based upon the files and records of DOE, that the defendant received funds totaling $35,590.98 for the time period at issue and that the defendant failed to repay DOE the amount of overpayments made under the CACFP and that there is a current outstanding balance of $35,590.98.[3]
Our review of the documentation provided by the plaintiff reveals that the audit it submitted does not establish the figure of $35,590.98 asserted as the amount due. Instead the audit recommends that an overclaim of $3,998.97 for the two audit periods ($2,285.12 for the year ending September 30, 1995, and $1,713.85 for the three-month period ending December 31,1995) be refunded to DOE. While the plaintiff asserts that the audit findings were "projected out" to reach the ultimate sum sought in this lawsuit, it is unclear how the sum of $35,590.98 was reached. Neither of the affidavits submitted in support of the motion for summary judgment explains how the affiant arrived at the amount of $35,590.98 as the amount now due. From the wording of Mr. Dupre's affidavit, it appears that $35,590.98 was the total amount of funds the defendant received from DOE, as well as the amount of the overpayments. The record does not support a finding that the entire amount of funding must be remitted upon a finding of overpayment of a portion of the funding. We also note that the plaintiff did not establish the amount due through requests for admissions or interrogatories. Further, *368 no statute or contract between the parties providing for payment of attorney fees was attached or cited.
We find that the movant's documentation in connection with its motion for summary judgment does not support its demands and that the granting of summary judgment was inappropriate. A genuine issue of material fact exists as to the amount owed by the defendant. Accordingly, the trial court judgment is reversed. We remand the matter to the trial court for further proceedings.

CONCLUSION
The defendants' peremptory exception of prescription is denied as to claims under the audit arising after August 26, 1995. However, it is granted as to claims arising on or before August 26, 1995, and as to the fraud claims against Ms. Steed. The trial court judgment granting summary judgment in favor of the plaintiff is reversed. The matter is remanded to the trial court for further proceedings.
Costs of this appeal are assessed against the plaintiff in the amount of $ 119.50.
EXCEPTION OF PRESCRIPTION DENIED IN PART AND GRANTED IN PART; SUMMARY JUDGMENT REVERSED; REMANDED.
NOTES
[1] However, the audit indicates that this period was actually for the year ending September 30, 1995.
[2] No other statute which would provide for a longer prescriptive period than discussed herein was asserted by the plaintiff.
[3] Also found in the record is an affidavit of correctness of account executed by Ursula Green, the plaintiff's accounting clerk, in which she likewise asserted familiarity with the amount owed and stated that the amount was $35,590.98. However, it is unclear when this affidavit was filed.