856 So.2d 1203 (2003)
GOOTEE CONSTRUCTION, INC.
v.
AMWEST SURETY INSURANCE COMPANY and Premier Glass Plus, Inc.
No. 2003-CC-0144.
Supreme Court of Louisiana.
October 10, 2003.
*1204 Harry T. Lemmon, William John Perry, Lloyd Noble Shields, Daniel Lund, III, Shields, Mott, Lund, New Orleans, Counsel for Applicant.
Thomas F. Gardner, Douglas Alfred Kewley, Roger C. Linds, Mary Ann Darr Wegmann, Gardner & Kewley, Metairie, Counsel for Respondent.
PER CURIAM.
This litigation arises out of a construction project at the New Orleans International Airport. Gootee Construction, Inc. ("Gootee") entered into a subcontract with Premier Glass Plus, Inc. ("PGP"). Amwest Surety Insurance Company ("Amwest") issued a performance bond guaranteeing PGP's performance of the subcontract.
Subsequently, PGP allegedly defaulted on the subcontract with Gootee, which in turn contends it completed PGP's work on the subcontract.
In 1998, Gootee filed suit against PGP and Amwest for breach of the subcontract. In 2000, the district court granted summary judgment in favor of Gootee and awarded it $701,827.22.
Apparently, once the suspensive appeal delays ran, Gootee threatened to execute on the judgment. As a result, Amwest paid Gootee $710,814.17 in satisfaction of the judgment. Amwest then filed a devolutive appeal.
The summary judgment in favor of Gootee was reversed on appeal, based on the court's finding that "summary judgment in favor of Gootee is not appropriate on the record before us because there are material issues of fact which remain unresolved and, because of the nature of this case and the third-party demands, it is not one which is best and efficiently decided in a piecemeal fashion." Gootee Construction, *1205 Inc. v. Amwest Surety Insurance Company, 00-1639 (La.App. 5 Cir. 2/28/01), 781 So.2d 792, writ denied, 01-0866 (La.5/11/01), 792 So.2d 739.
After the judgment of the court of appeal became final, Amwest made several demands on Gootee to return the monies Amwest paid in satisfaction of the nowreversed judgment. Gootee refused to do so.
Pursuant to an indemnity agreement, Amwest assigned its rights to C. Reese Owen.[1] Mr. Owen, as contractual subrogee of Amwest, then intervened in the suit and filed a motion for summary judgment, seeking to have the court order Gootee to repay the monies. In support, Mr. Owen argued that while there may be issues of material fact on the main demand between Gootee and PGP, there were no issues of fact concerning the intervention.
Gootee opposed Mr. Owen's motion for summary judgment. It argued that any rights possessed by Mr. Owen, as subrogee of Amwest, were inextricably interwoven with PGP's obligation to Gootee. Therefore, until a final determination of PGP's obligation to Gootee was made, Gootee argued Mr. Owen's claim was not ripe for decision.
After a hearing, the district court denied Mr. Owen's motion for summary judgment without assigning written reasons. Mr. Owen applied for supervisory writs from this ruling. The Court of Appeal, Fifth Circuit, denied the writ.
Upon Mr. Owen's application, we granted certiorari to consider the correctness of that decision. Gootee Construction, Inc. v. Amwest Surety Insurance Company, 03-0144 (La.3/28/03), 842 So.2d 1082. The sole issue presented for our consideration is whether Mr. Owen is entitled to summary judgment on his reimbursement claim.

DISCUSSION
A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." LSAC.C.P. art. 966(B); Independent Fire Insurance Company v. Sunbeam Corporation, 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226. The summary judgment procedure is designed to secure the "just, speedy, and inexpensive determination of every action." LSA-C.C.P. art. 966(A)(2); Racine v. Moon's Towing, 01-2837 (La.5/14/02), 817 So.2d 21.
Based on our review of the record, we conclude there are no genuine issues of material fact with regard to Mr. Owen's motion for summary judgment. All the parties agree that the funds at issue were paid to Gootee by Mr. Owen's subrogee, Amwest, pursuant to a judgment which was later reversed on appeal. Thus, if Mr. Owen is entitled to a refund of this money as a matter of law, summary judgment in his favor must be granted.
The sources of law are legislation and custom. LSA-C.C. art 1. In Louisiana, as in all codified systems, legislation is the superior source of law which cannot be abrogated by custom. LSA-C.C. art. 1, comments (a) and (c); LSA-C.C. art. 3. Accordingly, the starting point of our analysis begins with the codal articles. Louisiana Civil Code, article 2299, provides:
A person who has received a payment or a thing not owed to him is bound to *1206 restore it to the person from whom he received it.
This court has not previously interpreted Article 2299 in light of the question of whether funds paid in satisfaction of a judgment which is subsequently reversed must be refunded.[2] However, we agree with the decisions in Orgeron v. Security Industrial Funeral Homes, Inc., 96-2127 (La.App. 4 Cir. 2/26/97), 690 So.2d 243, and Lisi Realty, Inc. v. Plaisance, 306 So.2d 920 (La.App. 1st Cir.1974), writ denied, 310 So.2d 640 (1975), which applied the principle recited in Article 2299, although neither case cited codal authority.
In Orgeron, a funeral home filed suit against Elmo Orgeron, Jr., seeking to recover the costs of a funeral. The trial court granted summary judgment in favor of the funeral home and Mr. Orgeron devolutively appealed this judgment. During the pendency of the appeal, Mr. Orgeron paid the judgment. Subsequently, the judgment was reversed on appeal. Mr. Orgeron then filed suit against the funeral home to recover the amount of the judgment he paid. The trial court rendered judgment in favor of Mr. Orgeron. The court of appeal affirmed, stating:
Implicit in the rules that authorize the execution of judgments appealed devolutively is the obligation of the judgment creditor to return voluntary payments made by a judgment debtor to avoid execution of the judgment during the pendency of a devolutive appeal if the judgment is reversed.
Orgeron, 96-2127 at p. 5, 690 So.2d at 246.
In Lisi Realty, Inc., supra, a default judgment was rendered against Lisi Realty, Inc. During the pendency of the devolutive appeal, the creditor executed on the judgment. Subsequently, the default judgment was reversed, and Lisi Realty, Inc. filed suit against the creditor. The court of appeal held that even though the creditor was allowed to execute on the judgment after the suspensive appeal delays had run, "such creditor is subject to an action for the return of the funds received through such execution if the judgment is reversed." Lisi Realty, Inc., 306 So.2d at 921.
Gootee attempts to distinguish these cases by asserting they involved suits filed after the underlying judgments had been reversed, while the instant matter involves ongoing litigation. We find this to be a distinction without a difference. In this matter, Gootee simply does not have a judgment authorizing it to retain the funds. Quite to the contrary, the summary judgment in Gootee's favor has been reversed, demonstrating there is a legal dispute as to what, if anything, Amwest owes Gootee. Thus, we find no basis to distinguish Orgeron and Lisi Realty, Inc. from the instant case.
Consequently, the holdings of Orgeron and Lisi Realty, Inc. are consistent with the principle set forth in LSA-C.C. art. 2299.[3]See also LSA-C.C.P. art. 2252, official *1207 comment (d); Bomarito v. Max Barnett Furniture Co., 177 La. 1010, 150 So. 2 (1933) (when property sold is under a writ of fieri facias and the judgment is subsequently reversed on appeal, the party's remedy is to sue the original judgment creditor for return of the purchase price).
In the instant case, it is clear that at the time Amwest paid Gootee, the payment was made pursuant to a valid judgment. However, once that judgment was reversed on appeal, the basis for the payment ceased to exist. Therefore, Gootee has no legal right to retain the funds and must refund them to Amwest's subrogee, Mr. Owen.
While Gootee concedes it no longer has a basis to retain the funds based on the now-reversed judgment, it asserts Amwest owes it a contractual obligation under the bond to compensate it for expenses it incurred as a result of PGP's default. Gootee suggests that when Amwest paid the funds (for whatever reason) it was simply complying with its obligations under the bond. Thus, Gootee suggests it should be allowed to retain these funds pending a determination of liability.
We find no merit to this argument. It is undisputed that prior to the entry of summary judgment, there was no legal determination whether Amwest was liable to Gootee under the terms of the bond. Once that summary judgment was reversed, the parties were returned to their original positions. Gootee, as plaintiff, has the burden of proving that PGP defaulted on its subcontract and all other facts necessary to trigger Amwest's obligations under the bond. Thus, prior to a determination of liability, Gootee has no right to payment under the bond.
Gootee also points out Amwest has been placed in liquidation. Gootee suggests that if the money is returned, it is unlikely Gootee will be able to recover these funds in the event Gootee prevails at trial. The mere fact that Gootee may have difficulty collecting on a future judgment does not provide any legal authority for it to retain funds to which it is not now entitled.
In sum, we find the record demonstrates there is no genuine issue as to material fact, and that Mr. Owen is entitled to judgment as a matter of law. Accordingly, we reverse the judgment of the district court and render summary judgment in favor of Mr. Owen.

DECREE
For the reasons assigned, the judgment of the district court denying summary judgment is reversed. Summary judgment is hereby rendered in favor of C. Reese Owen and against Gootee Construction, Inc., in the principal sum of $710,814.17, plus costs and appropriate legal interest.
NOTES
[1] Mr. Owen was the principal of PGP. He paid Amwest $650,123.99 in reimbursement and partial satisfaction for monies Amwest paid to Gootee in satisfaction of the judgment.
[2] In State Department of Highways v. Busch, 254 La. 541, 225 So.2d 208, 210 (1969) this court recognized that "[a] sum paid in response to a money judgment by one cast at the trial court level while a devolutive appeal is pending is owed to the party who on appeal secures reduction or reversal of the judgment." In that expropriation case the court was not required to address the specific issue of whether the funds were to be refunded. The issue before the court was whether interest was due on the excess funds which were to be repaid to the plaintiff.
[3] This article echos a principle of ancient Roman law known as condictio sine causa or condictio causa data causa no secuta. As explained by Planiol, this principle allows for recovery of a debt which exists at the moment payment is made, but which is later rescinded or annulled. 2 M. PLANIOL, TRAITE ELEMENTAIRE DE DROIT CIVIL, No. 842 (La.St.Law.Inst.Trans. 1959).