870 So.2d 1002 (2004)
Davy JONES, Individually and on Behalf of his Minor Children
v.
The ESTATE OF Eliud Tony SANTIAGO, et al.
No. 2003-CC-1424.
Supreme Court of Louisiana.
April 14, 2004.
*1003 Ronald E. Corkern, Jr., Steven D. Crews, Corkern & Crews, for applicant.
*1004 Elvin C. Fontenot, Jr., Leesville, Bonita Preuett-Armour, Alexandria, for respondent.
WEIMER, Justice.
This matter is before the court following the denial of a motion for summary judgment in the trial court and denial of a writ of certiorari in the court of appeal. We granted certiorari in order to determine the propriety of those actions. Jones v. Estate of Santiago, 03-1424 (La.10/10/03), 855 So.2d 346. For reasons that follow, we reverse the lower court judgments and enter summary judgment in favor of State Farm Fire & Casualty Company (State Farm).

FACTS AND PROCEDURAL BACKGROUND
This case involves determining whether the shooting death of a wife and mother was intentional or accidental.
Davy Jones and his wife, Annissa, had been estranged for a period of several months. During that time she moved into the home of Eliud Santiago. Two days before the tragic shooting, Annissa and Davy reconciled and she agreed to move back to the Jones household. At some point, that decision was conveyed to Eliud Santiago. Annissa, accompanied by her then eight year old daughter, Kaitly[1], went to the Santiago home to retrieve some clothing and personal belongings. While the two were at the Santiago residence a series of events unfolded. In the end, Kaitly was the only survivor.
Eliud Santiago took his own life with a single gunshot to the head. Prior to shooting himself, Santiago shot Annissa Jones as well as his two young daughters. All of the victims died of gunshot wounds to the head.
Davy Jones filed suit to recover damages sustained on behalf of himself and his minor children as a result of the death of Annissa Jones, his wife and the mother of his children. The petition alleges that on or about June 20, 1999, Eliud Santiago, for unknown reasons, shot and killed Annissa Jones before shooting himself. The petition further alleges the death of Annissa Jones was caused by the negligence of Eliud Tony Santiago in (a) firing a firearm and striking Annissa Jones causing her death, (b) an intentional battery which resulted in the death of the minor children's mother, and (c) discharging a firearm in a negligent or reckless manner. Named as defendants were the Estate of Eliud Tony Santiago and State Farm Insurance Company,[2] the insurer providing homeowner's insurance coverage to Eliud Santiago.
State Farm filed a motion for summary judgment seeking to have plaintiffs' claim dismissed on the basis that the killing of Annissa Jones was not a covered occurrence under the insurance policy issued to Eliud Santiago and was specifically excluded by the intentional act exclusion. In support of its motion, State Farm submitted a number of exhibits including selected pages of the deposition testimony of the plaintiff, Davy Jones, as well as selected pages of the depositions of two officers employed by the Vernon Parish Sheriff's office who conducted an investigation at the scene of the shooting. State Farm also submitted a certified copy of the policy of insurance issued to Eliud Santiago *1005 arguing that the exclusion contained therein applies to the facts of this case.[3] In a supplemental memorandum in support of its motion for summary judgment, State Farm submitted selected passages from the deposition of Dr. Terry Welke, the Calcasieu Parish Coroner who conducted the autopsy on three of the decedents.
In opposition to the motion for summary judgment, plaintiff submitted the entirety of the deposition of Dr. Terry Welke and the deposition of Kaitly Jones, the daughter who accompanied Annissa to Mr. Santiago's residence on the afternoon of the shooting.
The court heard argument on the motion for summary judgment on October 22, 2002. Defendant argued Annissa's death was the result of an intentional shooting by the insured and the policy exclusion applied to deny coverage for the intentional act. Plaintiff argued the shooting was accidental rather than intentional and thus coverage under the homeowner's policy was not prohibited by the exclusion for intentional acts. The court took the matter under advisement to review the exhibits which had been offered in support of and in contravention to the motion.
On January 31, 2003, the court signed a judgment denying the motion for summary judgment based on the deposition testimony of Kaitly Jones. The court indicated that "if this witness is found to be credible it would tend to support plaintiff's version of the pertinent events."
State Farm applied for writ of certiorari to the court of appeal. The court of appeal denied the writ with the following notation: "We find no error in the trial court's ruling." State Farm then applied to this court for writ of certiorari.

DISCUSSION
A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." LSA-C.C.P. art. 966(B); Gootee Construction, Inc. v. Amwest Surety Insurance Company, 03-0144, p. 3 (La.10/10/03), 856 So.2d 1203, 1205; Independent Fire Insurance Company v. Sunbeam Corporation, 99-2181, 99-2257, p. 7 (La.2/29/00), 755 So.2d 226, 230-231. Summary judgment procedure is designed to secure the "just, speedy, and inexpensive determination of every action." LSA-C.C.P. art. 966(A)(2);[4]Gootee Construction, Inc., 03-0144 *1006 at 3, 856 So.2d at 1205; Racine v. Moon's Towing, 01-2837, p. 4 (La.5/14/02), 817 So.2d 21, 24.
In 1997, the legislature enacted LSA-C.C.P. art. 966(C)(2) which clarified the burden of proof in summary judgment proceedings.[5] The initial burden of proof remains with the mover to show that no genuine issue of material fact exists. If the mover has made a prima facie showing that the motion should be granted, the burden shifts to the non-moving party to present evidence demonstrating that a material factual issue remains. The failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion. Hutchinson v. Knights of Columbus, Council No. 5747,[6] 03-1533, (La.2/20/04), 866 So.2d 228; Hardy v. Bowie, 98-2821, pp. 4-5 (La.9/8/99), 744 So.2d 606, 609-610.
Our review of a grant or denial of a motion for summary judgment is de novo. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991). Thus, this court uses the same criteria as the trial court in determining whether summary judgment is appropriatewhether there is a genuine issue of material fact and whether mover is entitled to judgment as a matter of law. In Smith v. Our Lady of the Lake Hospital, Inc., 93-25121 (La.7/5/94), 639 So.2d 730, 750, this court recognized that a "genuine issue" is a "triable issue." The court continued: "An issue is genuine if reasonable persons could disagree. If on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue." The court further explained that a "fact is `material' when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery." Id.
Although summary judgment is seldom appropriate for determinations based on subjective facts of motive, intent, good faith, knowledge, or malice, this court acknowledged in Smith that "summary judgment may be granted on subjective intent issues when no issue of material fact exists concerning the pertinent intent." Smith, 639 So.2d at 751, citing Simoneaux v. E.I. du Pont de Nemours and Company, Inc., 483 So.2d 908, 912 (La.1986) (The court held that summary judgment is an appropriate method for disposing of a case wherein intent is a critical question if conclusory statements of a plaintiff are insufficient *1007 to support a finding of intent by reasonable minds.).
When a motion for summary judgment is made and supported, the adverse party may not rest on the allegations or denials of his pleadings but must set forth specific facts showing that there is a genuine issue for trial. LSA-C.C.P. art. 967.
In this case, State Farm submitted a number of exhibits in support of its motion for summary judgment. Selected pages of the deposition testimony of Davy Jones, plaintiff in this matter, were submitted and established that he and Annissa were legally married at the time of the incident. He had been working in Texas and would return to Louisiana to visit the children when he was off of work. The two families (Jones and Santiago) lived about five houses apart and had become friends. At some point during the time the families lived near each other, Annissa had moved in with Eliud Santiago. However, on the Friday prior to the shooting, Annissa and Davy reconciled. She had gone to the Santiago house to retrieve clothes for herself and the children to go to Texas with Davy on the Sunday afternoon of the shooting.
Selected pages of the deposition testimony of Detective Hilton were also submitted. He was one of the deputies dispatched to the scene to investigate. He identified photos of Eliud Santiago and testified that Santiago's two young daughters were found shot in the bathroom which was connected to the bedroom where Mr. Santiago's body was found. The gun, recovered near Santiago's body, was a 9 millimeter Ruger. The detective testified that two pages of paper containing contact numbers were found in the dining/kitchen area. These pages included instructions to close Santiago's checking account and send the balance to his son and daughter. Additionally, two boxes were found with a note to "Mr. Wadman" to mail the packages to Santiago's two other children. Detective Hilton was of the impression that this was a murder/suicide. He testified he did not see any evidence of a struggle in the master bedroomthe room in which Annissa's body was found.
Selected pages of the deposition of Detective Hagan were also submitted. He testified that he "interviewed the husband of the deceased, one of the victims, and interviewed one of the daughters." He assisted the lead detective at the crime scene by collecting evidence. Detective Hagan testified that Annissa was found inside a large walk-in closet. He believed there was women's clothing in the closet, but did not know to whom the clothes belonged. He testified that Annissa was shot on the front top of the head and it appeared she was facing him (Santiago) when shot. From past experience, the detective indicated the shots were fired at close range. A cartridge was found within three feet of the body. There was no indication of a struggle in the room, no overturned furniture, but he did not examine the body for bruises or cuts which might indicate a physical struggle.
State Farm submitted selected portions of Dr. Terry Welke's deposition; however, the plaintiff submitted the entirety of the deposition. Thus, the trial court had the benefit of the doctor's entire deposition for consideration.
Dr. Terry Welke, the Calcasieu Parish Coroner, was tendered as an expert in the field of pathology. He performed a partial autopsy, on the head and neck area of Annissa Jones, at the request of Frank Labbe, Coroner for Vernon Parish. Prior to conducting the autopsy, Dr. Welke was provided with a history of the events, including the number of people shot and that the shooter committed suicide. He testified *1008 there was nothing consistent with suicide in the death of Annissa Jones. There were two wounds to the left side of the head and another on the back of the right arm just above the elbow. He did not note any bruises, cuts, scrapes, or defensive wounds, but acknowledged there could have been a struggle with or without noticeable injuries. He determined the wounds to be from an intermediate range gunshot, medium caliber weapon, with the muzzle of the gun about 18-24 inches from the skin. The trajectory of one shot was from left to right, back to front and downwards; the other head wound trajectory was left to right, back to front with no significant deviation up or down. There was no soot or gunpowder within the wound which would be consistent with discharge of a firearm at contact or close range. He determined the manner of death to be homicide, which, according to the medical interpretation, is death of one individual caused by anothernot a natural death. Dr. Welke was unable to indicate the sequence of the shots or whether they were fired immediately after one another. Nor could he say which gunshot caused death, although he indicated either shot to the head could have caused death. Since the body had been partially embalmed prior to the partial autopsy, Dr. Welke could not tell which wounds were post mortem. As a coroner, Dr. Welke acknowledged he is not called upon to make a determination of whether a shooting is accidental or intentional. Because the shooting involved three shots, Dr. Welke indicated it would be extremely difficult to classify it as an accidental shooting. Of the accidental cases he had examined, none involved more than one shot.
The court also had the deposition of Kaitly Jones which was taken on December 5, 2001, approximately two and a half years after the incident. A thorough reading of Kaitly's deposition reveals confusion and scant recall of the events on the day her mother was shot. Understandably, she has been seeing various doctors to try to cope with this tragedy. Although she said she remembers the day of the shooting and remembers talking to someone from the sheriff's office, many answers to questions posed were that she could not remember. She initially stated she and her mother were unloading clothes from the closet when her mother found a gun under the clothes. Her mother and Tony started fighting and the gun went off. She could not remember who was holding the gun, how many shots she heard, or what she told the police that day. The only thing she remembers is "that he shot her on acc__the gun went off on accident." She related that no one told her the shooting was an accident, stating: "I just thought it up myself." At one point she said she saw her mother get shot, but then she said she did not see the actual shooting. She indicated that her mother and Tony were fighting (by that she explained she meant they were arguing) because he did not want her to leave. When questioned about when she remembered that they were fighting, she responded, "In myI can't even remember that. I was in my dreams." When questioned about where she was when her mother was shot she gave a variety of answers. She said she was standing beside the bed, in the bedroom right beside the door, halfway outside, and in the hallway. She said Tony gave her a portable telephone and told her to call 911. She ran outside screaming. She was unable to use the phone to call out because of an incoming call. A neighbor helped her call 911.
Following a de novo review of Kaitly's deposition, one can only conclude that her statement characterizing the shooting as accidental is mere speculation. When her deposition is reviewed in its entirety, it is *1009 clear she was not privy to the facts which would enable her to testify the shooting was accidental. She stated many times that she did not actually see what occurred and could not remember anything. Her physical location at the scene at the time of the shooting cannot be determined by her testimony. Her deposition testimony consists of her belief as to what occurred rather than on personal knowledge of the events. See, McLaughlin v. French Riviera Health Spa, Inc., 99-546 (La.App. 5 Cir. 10/26/99), 747 So.2d 652. (Plaintiff filed an affidavit indicating she "believed" certain assertions included therein. The court acknowledged that affidavits submitted in summary judgment proceedings are to be made on "personal knowledge," making plaintiff's "belief" speculation and of no probative value.)
Previously, this court considered a matter in which speculation was the basis for denying a motion for summary judgment. In Babin v. Winn-Dixie Louisiana, Inc., XXXX-XXXX, p. 5 (La.6/30/00), 764 So.2d 37, 40, plaintiff slipped and fell on plastic toothpick boxes in a grocery store aisle. At a motion for summary judgment defendant pointed out the absence of factual support for an essential element of plaintiff's cause of action under LSA-R.S. 9:2800.6. Since plaintiff was unable to produce factual support sufficient to establish he would be able to satisfy his evidentiary burden of constructive notice at trial, the trial court granted Winn Dixie's motion. On appeal, the court speculated that plaintiff could show there was a possibility the boxes had been on the floor for some period of time and Winn Dixie's employee was negligent for failing to observe the boxes. The court of appeal reversed the trial court's ruling granting summary judgment. On review, this court found that "such speculation falls far short of the factual support required to establish that plaintiff will be able to satisfy his evidentiary burden of proof at trial[,]" reversed the court of appeal, and reinstated the trial court judgment. Id.
We note that the Court of Appeal, First Circuit, considered the situation in which deposition testimony was contradicted by physical evidence. In Scott v. McDaniel, 96-1509 (La.App. 1 Cir. 5/9/97), 694 So.2d 1189, writ denied, 97-1551 (La.9/26/97), 701 So.2d 991, plaintiff argued the trial court improperly relied on the testimony of the investigating officer because that testimony was directly contradicted by the testimony of Kevin Scott, an occupant of the vehicle involved in the accident with a logging truck. Mr. Scott testified that prior to the collision, the driver of the vehicle in which he was riding took evasive action and the vehicle was struck in the rear. The trooper who investigated the accident testified the physical evidence at the scene indicated the vehicle operator took no evasive action prior to impact with the logging truck and the vehicle was not damaged in the rear. The court of appeal affirmed the granting of summary judgment in favor of the defendant representing the logging truck, finding the deposition testimony was inaccurate based on the physical evidence.
As indicated, Annissa Jones was shot three times. Although Dr. Welke could not conclusively say this was an intentional shooting, he opined that it was not an accidental shooting. The fact that more than one individual was shot, the fact that Annissa suffered two gunshot wounds to the head and another to the arm, and the fact that there were no signs of a struggle and no defensive wounds on the body led him to the conclusion that this was not an accidental shooting. Dr. Welke stated, "Well, it's more consistent with a homicide orit's difficult for me to call it an accidental shooting. One shot, I would say yes, the possibility is there. Three shots, I find it extremely difficult for an accidentalfor *1010 this firearm to be discharged accidentally three times." Dr. Welke indicated he had never seen a case where a person had been accidentally shot more than one time.
Additional physical evidence includes three other deaths, all caused by gunshot wounds to the head.
In Breland v. Schilling, 550 So.2d 609, 610 (La.1989), this court stated:
The purpose of the intentional injury exclusion is to restrict liability insurance coverage by denying coverage to an insured in circumstances where the insured acts deliberately and intends or expects bodily injury to another. The exclusion is "designed to prevent an insured from acting wrongfully with the security of knowing that his insurance company will `pay the piper' for the damages." [Citing] Transamerica Ins. Group v. Meere, 143 Ariz. 351, 694 P.2d 181, 186 (1984). Accord, United Servs. Auto. Ass'n v. Elitzky, 358 Pa.Super. 362, 517 A.2d 982 (1986).
Although the insured bears the burden of proving a policy of insurance affords coverage for an incident, the insurer bears the burden of proving the applicability of an exclusionary clause within a policy. Doerr v. Mobil Oil Corporation, XXXX-XXXX, p. 5 (La.12/19/00), 774 So.2d 119, 124, modified on other grounds on reh'g 00-0947 (La.3/16/01), 782 So.2d 573. Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180, 1183.
An insured party who shoots someone, generally, is not entitled to insurance protection because a shooting is ordinarily considered an intentional act intended or expected to cause bodily injury. This principle is explained in 15 WILLIAM SHELBY MCKENZIE & H. ALSTON JOHNSON, LOUISIANA CIVIL LAW TREATISE: INSURANCE LAW AND PRACTICE § 164 at 344 (2d ed.1996), as follows: "Insureds who pull loaded guns and shoot other persons have not found the courts receptive to their exculpatory explanations, even in defense of the insurer's motion for summary judgment."[7]
The facts of this case are tragic. However, when all the evidence is considered de novo, there can be no question that the shooting was intentional. To find the shooting was accidental would require the extraction of one conclusory, speculative statement from Kaitly's deposition while ignoring the inconsistent and confusing statements throughout the deposition, as well as the uncontroverted physical evidence.[8] Based on our review of the record, we conclude that defendant made a prima facie showing that the motion should be granted. At that point, the burden shifted to the plaintiff to present evidence demonstrating there remained a material issue of fact as to the issue of *1011 whether the shooting was accidental such that the exclusion did not apply. Based on the state of the evidence, we find reasonable persons could reach only one conclusionAnissa's death was the result of an intentional shooting. The lower courts erred when defendant's motion for summary judgment was denied.

CONCLUSION
For the foregoing reasons, we reverse the ruling of the trial court and enter summary judgment in favor of State Farm Fire & Casualty Company.
REVERSED AND RENDERED.
JOHNSON, Justice, concurs.
NOTES
[1] The child's name is spelled a number of different ways (Kaitlan, Kaitlyn, Katilyn) in various documents in the record. We use the spelling which appears in the petition for damages.
[2] In its answer to the petition, State Farm Fire & Casualty Company acknowledged it had been incorrectly named as State Farm Insurance Company.
[3] State Farm Fire & Casualty Company Homeowners policy # 18-B9-9302-0, with an effective date of August 29,1998, and an expiration date of August 29,1999, contained an exclusion which provided in part:

1. Coverage L [personal liability] and Coverage M [medical payments to others] do not apply to:
a. bodily injury or property damage:
(1) which is either expected or intended by an insured; or
(2) to any person or property which is the result of willful and malicious acts of an insured;
[4] This court has stated:

Article 966 was amended in 1996 to provide that summary judgment procedure is favored. LSA-C.C.P. art. 966(A)(2). Since a 1997 amendment to Article 966, Louisiana's standard for summary judgment has been closely aligned with the federal standard under Fed. Rule Civ. Proc. 56(c). When sufficient time has been allowed for discovery, the courts will assess the proof submitted by the parties equally, without the former presumption in favor of trial on the merits, in order to dismiss meritless litigation. Hardy v. Bowie, 98-2821, pp. 4-5 (La.9/8/99), 744 So.2d 606, 609-610, quoting Hayes v. Autin, 96-287 (La.App. 3 Cir. 12/26/96), 685 So.2d 691, writ denied, 97-0281 (La.3/14/97), 690 So.2d 41.
Hutchinson v. Knights of Columbus, Council No. 5747, 03-1533 (La.2/20/04), 866 So.2d 228 n. 2.
[5] LSA-C.C.P. art. 966(C)(2) provides:

The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
[6] Hutchinson, recently decided by this court, considered whether plaintiffs' affidavits, submitted in opposition to defendants' motion for summary judgment, were sufficient to defeat the granting of the motion. The Hutchinson case involved competing affidavits requiring credibility determinations that are inappropriate considerations on a motion for summary judgment.

This case is distinguishable because there were no competing affidavits requiring credibility evaluations. As will be discussed in greater detail, consideration of the entirety of the evidence based on de novo review reveals the physical evidence contradicts the speculative deposition testimony of the child.
[7] See Cavin v. Elliot, 597 So.2d 1255, 1257 (La.App. 3 Cir.1992) wherein the court observed:

Louisiana courts have consistently held that the aggressive act of pulling a loaded gun and firing it at a third party, in and of itself, supports the conclusion that the defendant/insured intended the resulting injuries because such consequences are almost certain to follow as the result of such actions.
[8] We are not insensitive to the fact that the deposition testimony was elicited from a young child who was subjected to a traumatic experience. However, we cannot ignore the physical evidence which overwhelmingly points to this being an intentional act.