974 So.2d 752 (2007)
Jayne Stiebing wife of/and Bruce STIEBING
v.
Donald ROMERO, Carmen. Romero, and State Farm Fire and Casualty Company.
No. 07-CA-723.
Court of Appeal of Louisiana, Fifth Circuit.
December 27, 2007.
*754 Richard J. Garrett, Attorney at Law, New Orleans, Louisiana, for Plaintiff/Appellant.
Thomas G. Buck, John C. Henry, Attorneys at Law, Metairie, Louisiana, for Defendant/Appellee.
Panel composed of Judges EDWARD A. DUFRESNE, JR., THOMAS F. DALEY, and FREDERICKA HOMBERG WICKER.
FREDERICKA HOMBERG WICKER, Judge.
This personal injury litigation arose from an accident on October 5, 2005, when plaintiff Jayne Stiebing fell off a nightstand at defendants' home. Plaintiffs Jayne and Bruce Steibing appeal from a summary judgment dismissing their petition. We affirm.
Plaintiffs commenced suit against defendants Donald Romero, Carmen Romero, and State Farm Fire and Casualty Company for injuries Jayne sustained while cleaning the Romeros' house. Jayne's deposition testimony, upon which the parties relied in the proceeding below, revealed the following.
Hurricane Katrina's effect on the community prompted Jayne and her friend Dolores Wiltz to provide cleaning services to people who were gutting their houses. Mrs. Romero responded to their advertised flyer. Jayne and Dolores agreed to discard the Romeros' ruined items and to pack the items that were salvageable. In turn, the Romeros agreed to provide the packing supplies and equipment needed for the job. Jayne and Dolores had never undertaken hurricane cleanup before this job. Upon the advice of others, Jayne took precautionary measures for mold and mildew.
When Jayne and Dolores arrived to clean the house, Mr. Romero pressured them to work quickly because the tear-down crew was there. Jayne had been told, however, that she and Dolores would be working alone.
Mrs. Romero was not home that day. Mr. Romero, who was intermittently present, did not have the needed supplies. Jayne and Dolores left the house to purchase boxes, tape, and bubble wrap. Later, Mr. Romero obtained additional supplies.
Jayne and Dolores worked four to five hours before the accident occurred. Mr. Romero was only present three or four times during the time they worked. He would leave for half-hour to two-hour periods.
Before the accident occurred, Jayne stood on a stable chair that was in the kitchen in order to gain access to unreachable *755 cabinets. Mr. Romero told her to use whatever she needed to get the job done. He did not know if there was a ladder available. Jayne and Dolores, however, looked through the house for ladders and stepstools. There were no ladders. They even asked the contractors. But the contractors did not speak English.
Afterwards, Jayne and Dolores were working in the master bedroom when the accident happened. Mr. Romero was not present. Dolores had asked Mr. Romero about the condition of the bedroom and he responded that he was giving the bedroom awayit was in good condition. Jayne assumed the furniture was in good condition. In order to take down the curtains, she decided to stand on the nightstand, which was directly under a curtain. She did not consider the chair she previously used. The nightstand was more convenient and they were rushing. Before climbing on the nightstand, Jayne tested it for stability. She "kind of just shook it, . . . and it seemed to be stable to me." She was only on the nightstand a minute or two "when it wobbled and [she] lost [her] balance, [her] knee turned in and [she] fell and hit the ground." Jayne fell backwards, She hit the back of her shoulder trying to brace herself against the armoire. Her knee twisted when she fell and she could hear it "like snap." She lay on the wet carpet. Later, she had knee surgery.
At first she testified that the nightstand did not break. Then when asked if anything cracked, or broke, she said: "Not that I'm aware of." She said she did not know if the nightstand broke.
Although Jayne has climbed on furniture to work at her house, she usually does not do this in a customer's house. People generally supplied her with the proper tools and equipment.
In essence, plaintiffs' petition alleged that the nightstand was a dangerous and defective condition, which caused the accident. The thrust of their claim is that the homeowners had a duty to notify Jayne of the defect.
Defendants filed an exception of no cause of action and/or motion for summary judgment. The crux of their argument is the same as that presented below. Defendants argue that there was no defect in the nightstand; the homeowners owed no duty to Jayne; and, that even if a duty was owed, Jayne failed to show her fall was caused by a breach of a duty. Jayne did not fall because of anything that the homeowners did or failed to do. She fell because she knowingly and voluntarily climbed up on a nightstand that was not meant to be a ladder, wearing wet shoes, and fell solely because of her own carelessness. In short, there was no hidden or unreasonably dangerous condition which could not be as easily discovered by the plaintiff as by anyone else.
On appeal plaintiffs argue that the trial judge erred in several respects.[1]
Plaintiffs assert that the homeowner had a duty to discover and warn plaintiff of any and all unreasonably dangerous conditions; and, she proved all of the elements necessary for the homeowners' negligence. In particular, she showed the property which caused the damage was in the custody of the defendants; the nightstand was defective because it had a condition that created an unreasonable risk of harm to persons on the premises (it buckled because it was *756 water-logged); and, the defect in the property was a cause-in-fact of the injury. Mr. Romero expected her to use the nightstand because he provided her with no other means to remove the curtains and he insisted she use whatever she needed to get the job done. As such, Mr. Romero breached his duty in not protecting her from the dangerous condition and in failing to take reasonable measures to protect against the unreasonable risk of harm or danger to her.
Summary judgment is a procedural device that is used when there is no genuine issue of material fact. Duncan v. U.S.A.A. Insurance Co., 06-363 (La.11/29/06), 950 So.2d 544, 546; La.C.C.P. art. 966. Appellate courts review summary judgments de novo under the same criteria used by the district court. Schroeder v. Board of Sup'rs of Louisiana State University, 591 So,2d 342, 345 (La.1991).
A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact, and the mover is entitled to a judgment as a matter of law. Article 966(B). A "genuine issue" is a "triable issue," that is, an issue on which reasonable persons could disagree. Jones v. Estate of Santiago, 03-1424 (La.4/14/04), 870 So.2d 1002, 1006 (citation omitted).
The initial burden of proof remains with the mover to show that no genuine issue of material fact exists. Id. If the mover has made a prima facie showing that the motion should be granted, the burden shifts to the non-moving party to present evidence demonstrating that a material factual issue remains. The failure of the nonmoving party to produce evidence of a material factual dispute mandates the granting of the motion. Id. (citations omitted). A "fact is `material' when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery." Id. (citation omitted).
Two theories of liability are available to plaintiff, who is claiming injury caused by a thing's condition. The first theory is negligence, under La. C.C. Art. 2315, and the second theory is strict liability under La. C.C. Art. 2317. Wallace v. Treasure Chest Casino, L.L.C., 05-484 (La.App. 5 Cir. 12/27/05), 920 So.2d 251, 255.[2] Under both theories, the plaintiff has the burden of, proving that the thing's condition presented an unreasonable risk of harm, or was defective, and that this condition was a cause-in-fact of the plaintiffs injuries. Both theories employ the duty-risk analysis on a case-by-case basis. The plaintiff must prove that the conduct in question was a cause-in-fact of the resulting harm, that the defendant owed a duty of care to the plaintiff, that the requisite duty was breached by the defendant, and that the risk of the harm was within the scope of the protection afforded by the duty breached. Id. (citations omitted).
A homeowner has a duty to discover, and either correct or warn a guest of any unreasonably dangerous conditions on his premises. However, this duty does not make the owner an insurer of his guests, against all possibility of accident. Dunn on Behalf of Dunn v. Foster, 422 *757 So.2d 518, 519 (La.App. 5 Cir.1982) (citations omitted). Neither is this duty breached by failure to repair or warn a guest, unless there is some inherently dangerous condition on the premises, which could foreseeably cause an unreasonable risk of harm, under the circumstances. Id. (citation omitted).
It is the court's obligation to decide which risks are unreasonable, based upon the facts and circumstances of each case. Pitre v. Louisiana Tech University, 95-1466 (La.5/10/96), 673 So.2d 585, 590, cert. denied, 519 U.S. 1007, 117 S.Ct. 509, 136 L.Ed.2d 399 (1996) (citation omitted). The obviousness and apparentness of a potentially dangerous condition are relevant factors to be considered under the duty-risk analysis. Pitre, supra, 673 So.2d at 591 (citation omitted). If the facts of a particular case show that the complained of condition should be obvious to all, the condition may not be unreasonably dangerous and the defendant may owe no duty to the plaintiff. Id.
A duty inherent with Jayne's work as a post-Katrina worker included packing items that were ruined as a result of the hurricane. The exact danger she complains of is one which she should have been aware. By the very nature of her work, Jayne was expected to anticipate situations of this kindthat the furniture in a hurricane-damaged house that was being gutted was potentially unstable to be used in place of a ladder or stepstool. Therefore, because the alleged water-logged defect in the nightstand was intimately connected with the work for which Jayne was hired, the Romeros had no duty to warn her of the fact that the nightstand was unsuitable for standing upon while balanced to remove curtains. The Romeros should not be held liable for Jayne's decision to use a nightstand for an unintended purposea substituted ladder or stepstool.
The Romeros did not breach a duty of care by failing to warn plaintiff that she might lose her balance and fall from a nightstand because the danger was self evident. Plaintiff was aware of the possibility that the nightstand was unstable. This is made evident by the Tact that Jayne tested it. Jayne's testimony established that the use of the nightstand was entirely up to her. She had previously used a stable chair in the kitchen to reach cabinets. In addition, she had the opportunity to purchase any supplies she needed to do the job. It was not necessary for her to use a nightstand at all. Under these circumstances, where plaintiff knew of the potential danger of standing on the nightstand and chose to proceed anyway, any further warning would be superfluous.
Although her injury is unfortunate, we hold that the obvious, potential danger of standing on the nightstand to remove curtains obviated any duty to warn plaintiff not to stand on the nightstand for that purpose.
Accordingly, we affirm the judgment granting the motion for summary judgment and dismissing plaintiffs' petition.
AFFIRMED.
NOTES
[1] In part, plaintiffs rely on Banks v. State Farm Ins, Co., 30,868 (La.App. 2 Cir. 8/19/98), 717 So.2d 687, to argue that since, the nightstand is not available, a trial is needed to determine whether it is defective. We find that Banks is inapplicable. There, the court found several issues of material fact.
[2] La.C.C. art. 2317.1, added in 1996, 1996 La. Acts, 1st Ex.Scss., No. 1, § 1, effective April 16, 1996, eliminated the distinction between the strict liability and negligence of the owner or custodian of property, by requiring a showing of knowledge or constructive knowledge in order to impose liability. Dupree v. City of New Orleans, 99-3651 (La.8/31/00), 765 So.2d 1002, 1007, n. 5.