**NOT DESIGNATED FOR PUBLICATION**

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

08-885


HARRY JOHN WALSH, JR.

VERSUS

JASON MORRIS, M.D., ET AL.


************


APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT,
PARISH OF RAPIDES, NO. 224,306
HONORABLE GEORGE C. METOYER, JR., DISTRICT JUDGE


************


JIMMIE C. PETERS
JUDGE


************


Court composed of Sylvia R. Cooks, John D. Saunders, and Jimmie C. Peters,
Judges.


**AFFIRMED.**


**Jean Walsh**
**2511 33rd Avenue**
**Meridian, MS 39301**
**(601)482-1018**
**IN PROPER PERSON, PLAINTIFF/APPELLANT**

**David R. Sobel**
**Jeremy C. Cedars**
**Provosty, Sadler, deLaunay,**
**Fiorenza & Sobel**
**Post Office Drawer 1791**
**Alexandria, LA 71309**

**(318) 445-3631**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **JASON MORRIS, M. D.**
        **LSUMC-S FAMILY PRACTICE CLINIC**

PETERS, J.

The plaintiff in this matter, Jean Walsh, is the surviving spouse of Harry Walsh. She appeals from the trial court's grant of summary judgment in favor of the defendants, Dr. Jason Morris and the LSUMC-S Family Practice Clinic (collectively referred to as defendants), dismissing her medical malpractice suit against them. For the following reasons, we affirm the trial court judgment in all respects.

## DISCUSSION OF THE RECORD

The facts of this case were laid out by this court in a prior opinion, *Walsh v. Dr. Jason Morris*, 07-579, pp. 1-2 (La.App. 3 Cir. 10/31/07), 970 So.2d 94, 95:[1]

> Harry Walsh was a patient of the LSUHSC Family Practice Medical Center (Medical Center) in Alexandria, Louisiana, for a period of time beginning in 2001. Pertinent to this matter are visits he made to the Medical Center on April 30 and May 5 and 6, 2003. On April 30, Mr. Walsh presented to the Medical Center with complaints of dizziness and stated that he had been doing yard work without drinking enough liquids. Mr. Walsh was being treated by the Medical Center for high blood pressure, and he related recent blood pressure readings he had obtained when visiting Wal-Mart. The staff physician, Dr. Brian Morris, recommended that Mr. Walsh remain adequately hydrated and to return if his symptoms persisted.
>
> Mr. Walsh returned to the clinic on May 6, complaining of dizziness and some chest discomfort, which Dr. Morris believed were related to his heart beating rapidly. Mr. Walsh told Dr. Morris that he had been working in his yard despite his chest discomfort. Dr. Morris ordered an EKG, which revealed that Mr. Walsh was in atrial fibrillation. According to Mr. Walsh's chart, Dr. Morris wanted to admit Mr. Walsh into the hospital and/or wanted him to consult with a cardiologist, but Mr. Walsh refused.
>
> Mr. Walsh returned the next day as recommended by Dr. Morris. Another EKG was performed, which revealed that he was still in atrial fibrillation. Mr. Walsh told Dr. Morris that he felt better, explaining that his heart still was beating fast but not as fast as the previous day. Dr. Morris made changes in Mr. Walsh's medication and scheduled him to return in one month.

---

[1]The first appeal arose from the grant of a summary judgment by the trial court dismissing the plaintiff's suit. This court reversed that judgment based on the trial court's abuse of discretion in not granting a continuance to the plaintiff.

On May 11, 2003, Mr. Walsh suffered a massive stroke which caused partial paralysis and brain damage. He was hospitalized for some time at Christus St. Francis Cabrini Hospital and was then transferred to a rehabilitation facility. In June 2003, he returned home where his wife cared for him until his death on November 19, 2006.

Believing Dr. Morris committed malpractice in his medical treatment of Mr. Walsh, the Walshes filed a complaint against him and LSUHSC Family Practice Center with the Patient's Compensation Fund. The medical review panel rendered a unanimous opinion that Dr. Morris's treatment of Mr. Walsh did not fall below the standard of care.

After this court reversed the trial court grant of summary judgment in favor of the defendants and remanded the matter to the trial court for further proceedings, Jean Walsh was substituted as the proper party plaintiff in this matter.

Thereafter, the defendants reurged their motion for summary judgment, alleging that there was an absence of factual support for the elements of Mrs. Walsh's claims against them. In support of their motion, the defendants introduced the Medical Review Panel Complaint; the affidavit of Dr. Eddie D. Johnson, a member of the Medical Review Panel, which included the Medical Review Panel Opinion; and the original petition for damages filed by Harry and Jean Walsh. Mrs. Walsh failed to introduce any expert testimony establishing the standard of care required in this matter. At the conclusion of the hearing, the trial court granted the defendant's motion for summary judgment and dismissed Mrs. Walsh's suit. After the trial court executed a written judgment, Mrs. Walsh perfected this appeal.

**OPINION**

On appeal, Mrs. Walsh offers a hodgepodge of information including newspaper articles pertaining to strokes and her communications with the court. As she is proceeding in proper person, we will assume that her argument is that the trial court erred in granting summary judgment in favor of the defendants.

2

In *Samaha v. Rau*, 07-1726, pp. 3-5 (La. 2/26/08), 977 So.2d 880, 882-83 (footnotes omitted), the Louisiana Supreme Court discussed the review standard applicable to motions for summary judgment:

> A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *Duncan v. U.S.A.A. Ins. Co.*, 2006-363 p. 3 (La.11/29/06), 950 So.2d 544, 546, see La. C.C.P. art. 966. A summary judgment is reviewed on appeal *de novo*, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; *i.e.* whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. *Wright v. Louisiana Power & Light*, 2006-1181 p. 17 (La.3/9/07), 951 So.2d 1058, 1070; *King v. Parish National Bank*, 2004-0337 p. 7 (La.10/19/04), 885 So.2d 540, 545; *Jones v. Estate of Santiago*, 2003-1424 p. 5 (La.4/14/04), 870 So.2d 1002, 1006.
>
> The parameters of a motion for summary judgment have been described by this court as follows:
>
>> A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La. C.C. P. art. 966(B). This article was amended in 1996 to provide that "summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action . . . The procedure is favored and shall be construed to accomplish these ends." La. C.C.P. art. 966(A)(2). In 1997, the legislature enacted La. C.C.P. art. 966 C(2), which further clarified the burden of proof in summary judgment proceedings, providing:
>>
>>> The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his

3

evidentiary burden of proof at trial, there is no genuine issue of material fact.

This amendment, which closely parallels the language of *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), first places the burden of producing evidence at the hearing on the motion for summary judgment on the mover (normally the defendant), who can ordinarily meet that burden by submitting affidavits or by pointing out the lack of factual support for an essential element in the opponent's case. At that point, the party who bears the burden of persuasion at trial (usually the plaintiff) must come forth with evidence (affidavits or discovery responses) which demonstrates he or she will be able to meet the burden at trial. . . . Once the motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion. (Emphasis added; citation omitted)

*Wright*, 2006-1181 p. 16, 951 So.2d at 1069-1070, *citing Babin v. Winn-Dixie Louisiana, Inc.*, 2000-78 (La.6/30/00), 764 So.2d 37, 39-40; *see also King*, 2004-337 p. 8, 885 So.2d at 545-546; *Jones,* 2003-1424 p. 4, 870 So.2d at 1005-1006; *Costello v. Hardy*, 2003-1146 p. 8-9 (La.1/21/04), 864 So.2d 129, 137-138; *Racine v. Moon's Towing*, 2001-2837 p. 4-5 (La.5/14/02), 817 So.2d 21, 24-25.

The plaintiff bears the burden of proof in a medical malpractice case. Pursuant to La.R.S. 9:2794(1), the plaintiff must prove three elements in order to prevail against a physician:

(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians . . . licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances . . . .

(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.

(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.

4

In *Samaha*, 977 So.2d at 883-84, the supreme court stated with regard to claims sounding in medical malpractice:

> To establish a claim for medical malpractice, a plaintiff must prove, by a preponderance of the evidence: (1) the standard of care applicable to the defendant; (2) that the defendant breached that standard of care; and (3) that there was a causal connection between the breach and the resulting injury. La. R.S. 9:2794. Expert testimony is generally required to establish the applicable standard of care and whether or not that standard was breached, except where the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony. *Pfiffner v. Correa*, 1994-0924, 1994-0963, 1994-0992 (La.10/17/94), 643 So.2d 1228.

In this instance, the defendants will not bear the burden of proof at the trial in this matter. Accordingly, they were only required to point out to the trial court the absence of factual support for one of the three aforementioned elements. La.Code Civ.P. art 966(C)(2). In that regard, the opinion of the Medical Review Panel stated the following conclusion:

> We have been advised that the law generally considers medical records to be inherently reliable. The medical records indicates that the patient refused hospitalization. Even if hospitalized immediately, it is unlikely to have prevented a stroke. The record indicates several instances where numerous therapies were refused while in the hospital, recommended by several doctors. His initial symptoms were general and not indicative of impending stroke.

Dr. Johnson's affidavit attests that the Medical Review Panel unanimously found no evidence that Dr. Morris deviated from the applicable standard of care and that none of his actions caused any harm to Mr. Walsh. He further stated that the opinion and conclusions reached were based on Mr. Walsh's medical records and were fully consistent with medical literature, peer review studies, and scientific studies which had been tested and accepted in the medical community.

In light of evidence presented by the defendants and Mrs. Walsh's failure to present any expert testimony establishing that the defendants breached the standard

5

of care, we find no error in the trial court's grant of the summary judgment. Thus, we find no merit in Mrs. Walsh's appeal.

## DISPOSITION

We affirm the trial court judgment granting summary judgment in favor of Dr. Jason Morris and the LSUMC-S Family Practice Clinic dismissing the plaintiff's claims against them. We assess the cost of this appeal to the plaintiff, Jean Walsh.

**AFFIRMED.**

**This opinion is NOT DESIGNATED FOR PUBLICATION. Rule 2-16.3, Uniform Rules, Courts of Appeal.**

6