# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 09-927


DIANNE ALEXANDER, ET UX.

VERSUS

LAFAYETTE CRIME STOPPERS, INC., ET AL.


**********


APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 70296
HONORABLE JOHN E. CONERY, DISTRICT JUDGE


**********


## MARC T. AMY
## JUDGE


**********


Court composed of Sylvia R. Cooks, Marc T. Amy, and Elizabeth A. Pickett, Judges.


**AFFIRMED.**


Cooks, J., Dissents.

Douglas C. Longman, Jr.
Longman Russo
Post Office Drawer 3408
Lafayette, LA  70502-3408
(337) 262-9000
COUNSEL FOR DEFENDANT/APPELLEE:
    Lafayette Crime Stoppers, Inc.
    Baton Rouge Crime Stoppers, Inc.

L. Clayton Burgess
Post Office Drawer 5250
Lafayette, LA  70502-5250
(337) 234-7573
COUNSEL FOR PLAINTIFF/APPELLANT:
    Dianne Alexander
    Herman Alexander

AMY, Judge.

The plaintiffs brought suit for specific performance against the defendants for failure to pay them reward money they alleged was due to them. The defendants filed motions for summary judgment asserting there was no genuine issue of material fact in that the plaintiffs would be unable to prove at trial that a contract ever existed between the parties. The trial court granted the motions. For the following reasons, we affirm.

**Factual and Procedural Background**

In the summer of 2002, after several South Louisiana women had been murdered, the Multi Agency Homicide Task Force (Task Force) was established to investigate these murders, believed to be committed by the same individual referred to as the South Louisiana Serial Killer. In April 2003, the Baton Rouge Crime Stoppers (BCS) began publicizing a reward offer in newspapers, television stations, and billboards around the Baton Rouge area regarding the South Louisiana Serial Killer. A short time later, Lafayette Crime Stoppers (LCS) also publicized a reward offer. Both reward offers provided an expiration date of August 1, 2003.

According to the plaintiffs' petition, on July 9, 2002, Dianne Alexander was attacked in her home in St. Martin Parish. Ms. Alexander's son, Herman Alexander, arrived home during the attack and chased the attacker from the property. Ms. Alexander reported the attack to local police and, later, both Ms. Alexander and her son described the attacker to the St. Martin Sheriff's Department.

According to his investigative report, Lieutenant Boyd, the lead investigator on Ms. Alexander's attack, began to suspect that Ms. Alexander's attacker could be the same man identified as the South Louisiana Serial Killer, after investigators linked the death of a Lafayette woman to the suspected serial killer. In May 2003,

Lieutenant Boyd shared information regarding Ms. Alexander's attack with the Lafayette Sheriff's Department, who in turn shared the information with the Task Force.

On May 22, 2003, Ms. Alexander was interviewed by an FBI agent assisting the Task Force. Based upon that interview, a composite sketch was drawn and released to the public on May 23, 2003. Investigators believed the composite sketch matched the description of a possible suspect in an investigation being handled by the Louisiana Attorney General's Office and the Zachary Police Department. On May 25, 2003, a photo lineup was prepared and presented to Ms. Alexander, who identified her attacker as the same man suspected in the Zachary investigation, Derrick Todd Lee.

On or about August 14, 2003, Ms. Alexander contacted LCS and sought to collect the advertised award, however, LCS informed her she was ineligible to receive the award. On February 22, 2006, Ms. Alexander and her son filed a lawsuit against BRCS and LCS, alleging that the defendants owed them $100,000 and $50,000, respectively, for the information they provided to the defendants. The defendants filed motions for summary judgment asserting that a valid contract never existed between the parties. Specifically, the defendants argued that the plaintiffs never provided information to Crime Stoppers via the tipster hotline and thus did not comply with the "form, terms, or conditions required by the Crime Stoppers offers[.]" The trial court granted the defendants' motions for summary judgment, finding that the offer from Crime Stoppers was conditioned on the information being provided to the defendant entities rather than law enforcement.

2

The plaintiffs appeal, asserting that there is a genuine issue of material fact that the LCS and BRCS offers contained a requirement that acceptance of the reward must be done through the Crime Stoppers' tipline.

**Discussion**

*Summary Judgment*

Louisiana Code of Civil Procedure Article 966(B) provides, in part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." Paragraph C(2) of that article sets forth the burden of proof applicable to the motion for summary judgment, providing:

> The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

On appeal, a trial court's ruling on a motion for summary judgment is reviewed pursuant to the de novo standard of review. *Jones v. Estate of Santiago*, 03-1424 (La. 4/14/04), 870 So.2d 1002.

*Contract*

Louisiana Civil Code Article 1927 provides:

> A contract is formed by the consent of the parties established through offer and acceptance.

3

Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent.

Unless otherwise specified in the offer, there need not be conformity between the manner in which the offer is made and the manner in which the acceptance is made.

"Louisiana jurisprudence has recognized that an advertisement may constitute an offer susceptible of giving rise to a binding contract upon acceptance in instances where a prize is offered or where the terms of a contest are announced." *Woods v. Morgan City Lions Club*, 588 So.2d 1196, 1200 (La.App. 1 Cir. 1991). Once a plaintiff performs all of the requirements of the offer in accordance with the published terms, it creates a valid and binding contract, under which one is entitled to the promised rewards. *Id.*; *Schreiner v. Weil Furniture Co.*, 68 So.2d 149 (Orl.Ct. of App.1953).

The offer made by LCS in a May 14, 2003 press release, reads as follows:

The Greater Lafayette Chamber of Commerce has joined with Lafayette Crime Stoppers to offer a reward of $50,000 for information relating to the murders of five south Louisiana women. A $25,000 reward offer by Lafayette Crime Stoppers has been matched through commitments from Chamber members

In order to qualify for the reward, the tipster must p[r]ovide information which leads to the ar[r]est, DNA match, and the formal filing of charges against a suspect through grand jury indictment or Bill of Information. In addition, the qualifying tip must be received prior to midnight, August 1, 2003. Investigators with the Serial Killer Task Force have expressed optimism that a large enough reward might provide the impetus for someone with knowledge of the killings to come forward. By stipulating a deadline, investigators hope to expedite receipt of the information.

All callers to the Crime Stoppers Tipsline remain anonymous. A code number is issued as the only means of identification. Tips can be submitted 24 hours a day at 232-TIPS or toll free at 1-800-805-TIPS.

The offer from BRCS, as published in the *Morning Advocate*, reads as follows:

4

Crime Stoppers, Inc. $100,000 reward for information on the South Louisiana Serial Killer. A $100,000 reward will be given for information leading to the arrest and indictment of the South Louisiana Serial Killer. Call today and help make Baton Rouge a safer place for you and your family. All calls remain anonymous. 334-STOP or 1-877-723-7867. Reward expires August 1, 2003.

Both LCS and BRCS offers were irrevocable offers because they specified a period of time for acceptance. *See* La.Code Civ. art. 1928. Louisiana Civil Code Article 1934 provides that "acceptance of an irrevocable offer is effective when received by the offeror." Acceptance is received when it comes into the possession of a person authorized by the offeror to receive it, or when it is deposited in a place the offeror has indicated as the place where communications of that kind are to be deposited for him. *See* La.Civ. Code art. 1938; *Kent v. Hogan*, 03-2424 (La.App. 1 Cir. 10/29/04), 897 So.2d 68.

The plaintiffs argue that there is a genuine issue of material fact as to whether they accepted the Crime Stoppers' reward offers; however, the plaintiffs admit that they did not contact either Crime Stopper organization before August 1, 2003. The plaintiffs argue that they accepted the offers by performance when they provided information about the serial killer to law enforcement. Further, the plaintiffs contend that this performance is a customary manner of accepting reward offers from Crime Stopper organization.

In the present matter, the plaintiffs' acceptance of the reward offers must have been received by the defendants (offerors) by the time prescribed in the offer (August 1, 2003) in the place where communications of that kind were to be deposited (the phone number cited in the offers). The record contains no evidence indicating the defendants were notified by the plaintiffs in the time and manner indicated in the offer. While the plaintiffs may have provided information related to the arrest or

indictment of Derrick Todd Lee to local law enforcement and the Task Force, there is no indication in the offer that either of those parties were the offerors of the reward or persons authorized to receive acceptance on their behalf.

The plaintiffs argue that they accepted the offers by performance when they provided information about the serial killer to law enforcement. Further, the plaintiffs contend that this performance is a customary manner of accepting reward offers from Crime Stopper organization. While acceptance may be valid if customary in similar transactions, according to La.Civ.Code art. 1936, it must be "customary in similar transactions at the time and place the offer is *received*." (Emphasis added.) As indicated above, there is no evidence in the record that the defendants received any acceptance of the offer. Accordingly, no contract was formed between the parties. La.Civ.Code art. 1927.

## DECREE

For the foregoing reasons, the judgment granting the defendants' motions for summary judgment is affirmed. All costs of these proceedings are assessed against the plaintiffs-appellants.

**AFFIRMED.**

6