77 So.3d 323 (2011)
Frances ROBERTSON, Phillis Castille, Leslie Robertson, and Stewart Robertson, individually and on behalf of their deceased husband and father, respectively, Harris J. Robertson
v.
DOUG ASHY[1] BUILDING MATERIALS, INC., et al.
No. 2010 CA 1547.
Court of Appeal of Louisiana, First Circuit.
October 4, 2011.
*324 Susannah B. Chester, Charles Valles, Kevin Oliver, Dallas, TX, Julie A. Ardoin, Kenner, LA, Robert E. Arcenaux, Metairie, LA, for Plaintiffs-Appellants Frances Robertson, Phillis Castille, Leslie Robertson, and Stewart Robertson.
Gary A. Bezet, Barrye P. Miyagi, Baton Rouge, LA, for Defendant-Appellee George Pacific Corp.
*325 Dwight C. Paulsen, III, New Orleans, LA, Edward M. Slaughter, Dallas, TX, Albert H. Parnell, Atlanta, GA, for Defendant-Appellee Sherwin Williams Co.
Philippe J. Langlois, James Ryan, III, New Orleans, LA, for Defendant-Appellee Levert-St. John, Inc.
Jonathan P. Hilburn, Jacqueline Romero, New Orleans, LA, for Defendant-Appellee Welco Manufacturing Co.
Ernest G. Foundas, New Orleans, LA, for Defendant-Appellee Union Carbide Corp.
Before PETTIGREW, McCLENDON, and WELCH, JJ.
WELCH, J.
Plaintiffs, Frances Robertson, Phillis Castille, Leslie Robertson, and Stewart Roberston, appeal a trial court judgment granting summary judgment in favor of defendant, Georgia-Pacific, LLC (Georgia-Pacific), dismissing their survival and wrongful death claims. We reverse and remand for further proceedings.

BACKGROUND
On June 30, 2004, Harris Robertson (Harris) was diagnosed with mesothelioma and died from the disease on November 27, 2004. On May 26, 2005, plaintiffs, Harris' wife and children, filed this lawsuit against a host of defendants seeking to recover damages allegedly resulting from Harris' exposure to asbestos-containing products while working as a sheetrock installer, which plaintiffs claimed caused Harris' fatal disease. Three of the defendants in the litigation are Georgia-Pacific, Union Carbide Corporation (Union Carbide), and The Sherwin-Williams Company (Sherwin-Williams).[2] Plaintiffs averred that Georgia-Pacific manufactured and Sherwin-Williams sold the asbestos-containing products to which Harris had been exposed. They premised liability against Union Carbide as the alleged supplier of raw asbestos used to manufacture the products Harris had been exposed to. Specifically, plaintiffs alleged that from 1960-1970, while doing sheetrock installation work for V.P. Pierret Construction Company, Harris had been regularly exposed to friable asbestos and asbestos-containing products present in joint compounds utilized during the sheetrock finishing process. As a result of such exposure, plaintiffs averred, the asbestos dust and fibers became airborne, landing on Harris' clothing, and were inhaled or otherwise ingested by him. Plaintiffs claimed that Harris' exposure to asbestos-containing products caused his mesothelioma.
On March 24, 2008, Georgia-Pacific filed its first motion for summary judgment, asserting that plaintiffs had no evidence that Harris had been exposed to any products manufactured by Georgia-Pacific or by Bestwall, its predecessor company, and therefore, plaintiffs could not meet their threshold burden of proof in a mesothelioma case of proving that Harris sustained *326 significant exposure to any of its asbestos-containing products. The following month, plaintiffs dismissed their lawsuit against Georgia-Pacific without prejudice. On November 25, 2008, plaintiffs filed a supplemental petition adding Georgia-Pacific as a defendant and re-urging liability against Georgia-Pacific as the manufacturer of joint compound asbestos-containing products to which Harris had been exposed.
On October 8, 2009, Georgia-Pacific again moved for summary judgment on the exposure issue, and the following month, it filed a supplemental motion for summary judgment. Georgia-Pacific urged that plaintiffs bore the burden of proof to show that Harris sustained significant exposure to Georgia-Pacific's products and that plaintiffs had "no evidence of any exposure to asbestos, much less any significant exposure to asbestos, from any Georgia-Pacific product." Georgia-Pacific asserted that plaintiffs could not produce evidence sufficient to warrant the inference that Harris was exposed to asbestos as a result of its activities or to warrant an inference that its activities were a substantial factor in causing the plaintiffs' injuries, and plaintiffs' failure to provide evidence of any asbestos exposure to Georgia-Pacific products compelled dismissal of plaintiffs' claims.
In support of its motion, Georgia-Pacific introduced its answers to interrogatories in which it provided extensive details on the finishing products it manufactured from 1965 through the mid 1970s. It also introduced excerpts of the deposition testimony of three of Harris' co-workers on sheetrock finishing jobs, asserting that such testimony provided no evidence of significant asbestos exposure to any Georgia-Pacific products. Furthermore, Georgia-Pacific claimed, even if that testimony showed that Harris did use a Georgia-Pacific asbestos-containing product on the job, the testimony of one of his co-workers indicated that the product did not produce dust, and therefore, plaintiffs could not show Harris had actually been exposed to asbestos from the product.
The evidence submitted by Georgia-Pacific in support of its motion can be summarized as follows: Bobby Robertson, who worked with Harris on various drywall jobs from the early 1960s through the 1970s, testified that Gold Bond and USG drywall finishing products had been used on the jobs, but he could not recall ever having used any Georgia-Pacific finishing products. Harold Robertson, whose depositions were taken in 2008 and 2009, testified that he remembered having used Georgia-Pacific joint compound in 20-pound blue and white bags, although he could not remember any writing on the bags or any logos thereon. He specifically recalled using Georgia-Pacific joint compound that had to be mixed. However, he could not provide details regarding the specific jobs or locations where the products had been used or how much the products had been used, but recollected generally that the products had been used at some time. He also identified Gold Bond and Welcote as other brands of finishing materials that had been used on the jobs, stating that they used just about every type of dry mix joint compound there was. Harold acknowledged having worked with Harris on an as needed basis until the 1980s, when he and Harris worked together routinely.
Raymond Robertson, who worked with Harris from 1969 through the 1980s for two different contractors in the Lafayette and Baton Rouge areas, testified that he recalled using Gold Bond and Welcote joint compound. He specifically recalled using a quick-drying pre-mixed Georgia-Pacific product identified in a picture as *327 "Speed Set Vinyl Gypsum Quick Setting Joint Compound." He stated that this product was used only on joints, was pre-mixed in the container, and did not require sanding with sandpaper following the application, but was wiped with a damp sponge, which did not create any dust. Raymond could not provide a specific year or project on which the Georgia-Pacific product had been used and indicated that the product was not used regularly. According to Raymond, all of the other finishing products, whether ready mix or powdered, required sanding, and their product of choice was Gold Bond ready mix. Raymond had no recollection of having used any other Georgia-Pacific product.
In response to Georgia-Pacific's motion for summary judgment and supplemental motion for summary judgment, plaintiffs asserted that there are genuine issues of material fact as to whether Harris had been exposed to Georgia-Pacific's asbestos-containing finishing products. They claimed that the testimony of Harris' co-workers demonstrated that Harris worked with Georgia-Pacific's finishing products for at least a ten-year period from approximately 1970 through the 1980s and that Harris breathed dust during each aspect of the sheetrock finishing process. They also asserted that it was virtually unquestionable that a majority of Georgia-Pacific's finishing products contained asbestos through 1977.
Plaintiffs relied on Harold and Raymond's testimony indicating that they recalled having used Georgia-Pacific products on the job and the testimony of all of the co-workers providing more details on their work history and the nature of the sheetrock finishing process. Harold testified that he worked with Harris on numerous jobs beginning in the 1960s through the mid 1970s, but also acknowledged that he worked on his own for some time until he went to work for a mill in the early 1980s. Harold stated that Harris worked in the Baton Rouge area in the late 1960s and then in the Lafayette area. Harold testified they used Georgia-Pacific sheetrock mud and joint compound at some point in time, but he could not identify the specific jobs or locations at which the products were used. Harold stated that they used two or three other brands of sheetrock mud in addition to Georgia-Pacific's, including Gold Bond and Welcote. When asked about the specific type of Georgia-Pacific joint compound that had been used on their projects, Harold stated that they had used 20-pound bags that were blue and white. He also stated that when they worked in the Baton Rouge area, Gold Bond ready mix joint compound was the product they used most often.
Raymond testified that he began working with Harris in Baton Rouge in 1968 for a painting contractor and continued to work with him during a three to five-year period. During that time, the work included sheetrock finishing and painting. In the early 1970s, Raymond began working with Harris in the Lafayette area for two different painting contractors, and he worked with Harris until the early 1980s. Raymond returned to work part-time with his brother after Harris became ill. When asked about the products they used on their jobs, Raymond associated acoustic mud and sheetrock powder, ready mix with Georgia-Pacific. He recalled having used Georgia-Pacific sheetrock mud while working in Lafayette, and he specifically remembered using a Georgia-Pacific product identified as "Speed Set Vinyl Gypsum Adhesive Quick Setting Joint Compound" while working with Harris in Lafayette.
Regarding the sheetrock finishing process, Harris' co-workers acknowledged that the entire process, from mixing the *328 sheetrock mud powder in a bucket, sanding the walls and ceilings, and cleaning the area afterwards, was a very dusty process, during which they would inhale the dust and the dust would fall all over them.
In further opposition to the motion for summary judgment, plaintiffs offered copies of photographs of two of Georgia-Pacific's finishing products and Georgia-Pacific's answers to interrogatories. Therein, Georgia-Pacific was asked to identify those products it manufactured that contained asbestos. Georgia-Pacific stated that Bestwall, a company it acquired in 1965, had manufactured a limited line of asbestos-containing drywall finishing products beginning in July of 1956. Georgia-Pacific denied manufacturing or selling any such products until acquiring Bestwall in 1965, and by 1977, its gypsum division ceased manufacturing all such products. In the interrogatories, Georgia-Pacific essentially admitted that it manufactured and sold asbestos-containing finishing products from the mid-1960s through 1977. Georgia-Pacific identified specific asbestos-containing products it manufactured, including, among others, "All Purpose Joint Compound," "Joint Compound," "Ready Mix," and "Speed Set/One Day." According to Georgia-Pacific, the product "Ready Mix" was first sold by Bestwall in 1963 and Georgia-Pacific continued to manufacture it after 1965. In 1973 or 1974, Georgia-Pacific introduced an asbestos-free formula; however, the availability of asbestos and asbestos-containing formulations may have varied from state to state from 1973 to 1977, the last year that asbestos-containing "Ready Mix" was manufactured. Georgia-Pacific provided similar details for its "All Purpose Joint Compound" product and the other asbestos-containing products it identified in its interrogatories. Additionally, plaintiffs offered the deposition testimony of Oliver C. Burch, who acknowledged that no warning labels regarding asbestos appeared on any Georgia-Pacific asbestos-containing products before 1973, along with numerous invoices referencing Georgia-Pacific's purchase of raw asbestos from Union Carbide from 1970 through 1977.
During the course of the litigation, Sherwin-Williams filed a motion to strike a portion of the testimony of plaintiffs' expert pathologist, Dr. Eugene Mark, whose expert opinion plaintiffs intended to rely on to establish that Harris' exposure to asbestos-containing joint compounds purchased at or sold by Sherwin-Williams was a substantial factor in bringing about or causing his mesothelioma. In its motion to strike, Sherwin-Williams moved for an order precluding Dr. Mark from offering what it claimed to be "unreliable testimony" that any fiber or every exposure above background was a substantial contributing factor in causing Harris' disease. Georgia-Pacific joined in Sherwin-Williams' motion to strike that portion of Dr. Mark's testimony.[3]
The hearing on the motion to strike a portion of Dr. Mark's testimony and the motions for summary judgment filed by numerous defendants was set for January 19, 2010. On that date, two hearings were held. At the first hearing, the court heard *329 Sherwin-Williams' motions for summary judgment and its motion to strike a portion of Dr. Mark's testimony. At the outset, plaintiffs moved for a continuance, stating that some of the defendants in the litigation had moved for summary judgment on the issue of causation and despite their best efforts, plaintiffs had not been able to obtain a final, notarized copy of Dr. Mark's causation affidavit to file in response to the various motions for summary judgment. Plaintiffs explained that Dr. Mark, who had been deposed on January 7, 2010, was contacted the next day and asked to review the evidence to determine which exposures he considered to be substantial contributing factors in causing Harris' disease in anticipation of the defendants filing motions to address causation issues, but received no response to repeated requests for such information prior to the hearing. Plaintiffs requested a continuance on each motion set for hearing that day that addressed the issue of causation and Dr. Mark's opinions. The trial court denied plaintiffs' motion for a continuance and granted Sherwin-Williams' motion to strike a portion of Dr. Mark's opinion testimony to prohibit the doctor from offering testimony that any fiber or every exposure to asbestos above background was a substantial contributing factor in causing Harris' disease. In so doing, the court found that there was no foundation supporting this opinion as Dr. Mark had no epidemiology study to rely on and did not know what the dose of exposure would have been as to any particular defendant.
Later that afternoon, the court first heard and granted a motion for summary judgment filed by Welco Manufacturing of Missouri, after specifically finding that defendant had offered evidence that none of its products came to Louisiana and plaintiffs offered no evidence in opposition to the motion. Immediately thereafter, plaintiffs moved for dismissal without prejudice of all claims against Georgia-Pacific and Union Carbide pursuant to La. C.C.P. art. 1671. That provision states that a "judgment dismissing an action without prejudice shall be rendered upon application of the plaintiff and upon his payment of all costs, if the application is made prior to any appearance of record by the defendant." La. C.C.P. art. 1671. It further provides that if the application is made after an appearance by the defendant, the court may refuse to grant the judgment of dismissal except with prejudice. Id. After moving for the Article 1671 dismissal, plaintiffs' attorney stated that if the court was inclined to deny the request for dismissal without prejudice, the request would be withdrawn and plaintiffs would continue with the remaining motions.
In response to the motion, Georgia-Pacific informed the court that it did not consent to a dismissal without prejudice and instead asked the court to dismiss the case with prejudice, urging that plaintiffs' attorney had admitted at the earlier hearing that if he lost his expert, Dr. Mark, he could not prove a case against Georgia-Pacific. Union Carbide's attorney echoed those statements, and also added that plaintiffs had no evidence and that both defendants should be dismissed with prejudice. Plaintiffs' attorney started to address a point but declined to do so. Thereafter, the court granted Georgia-Pacific and Union Carbide's motions to dismiss the lawsuits with prejudice, to which plaintiffs offered no objection. The court then heard an employer defendant's motion for summary judgment, which plaintiffs did not oppose, and dismissed that defendant, finding there was not evidence of substantial exposure to asbestos during Harris' employment.
On January 29, 2010, plaintiffs filed a motion for a new trial on the grant of Georgia-Pacific and Union Carbide's motions *330 to dismiss the lawsuits with prejudice and a motion for an expedited hearing on the request.[4] Therein, plaintiffs argued that it was procedurally improper for the trial court to dismiss the lawsuits with prejudice after plaintiffs had moved to dismiss the lawsuits under Article 1671, submitting that only a plaintiff could obtain a dismissal of a lawsuit pursuant to that provision and that a dismissal with prejudice could only be rendered if the plaintiff in fact had consented to a dismissal with prejudice, which they did not.
When the case was called for trial on February 2, 2010, only one defendant, Sherwin-Williams, remained in the litigation. Plaintiffs moved to continue the trial on the basis of their pending procedural challenge to the dismissal of Georgia-Pacific and Union Carbide with prejudice at the January 19, 2010 hearing. The trial court stated that it did not dismiss the lawsuits against Georgia-Pacific and Union Carbide under Article 1671, but granted their motions for summary judgment and on that basis, dismissed the lawsuits against both entities with prejudice. The trial court set the plaintiffs' motion for a new trial as to Georgia-Pacific and Union Carbide for March 2, 2010, to be heard with all pending motions filed by the plaintiffs and Sherwin-Williams challenging the trial court's denial of Sherwin-Williams' motion for summary judgment, the court's refusal to grant a continuance at the January 19, 2010 hearing, and the court's denial of plaintiffs' motion to supplement the record with the affidavit of Dr. Mark.
On February 23, 2010, the trial court signed a judgment granting Georgia-Pacific's motion to dismiss plaintiffs' claims with prejudice. That judgment indicated that the dismissal had been made pursuant to Article 1671.
The following day, plaintiffs filed a supplemental and amended response to all of the defendants' motions for summary judgment, filing into the record the Dr. Mark's causation affidavit that had been sworn to and notarized on January 21, 2010, and the affidavit of Dr. Philip Perret, who attested that he reviewed the depositions of Harris' co-workers, and to the extent that Harris used any compounds containing asbestos, one would expect that he would have inhaled the materials during the sheet rocking process, and such would be considered, to a reasonable degree of medical certainty, as a causative agent in the development of Harris' mesothelioma. These affidavits, plaintiffs insisted, created a genuine issue of material fact as to whether Harris' exposure to asbestos-containing finishing products manufactured by Georgia-Pacific and National Gypsum Company were substantial contributing factors in the development of his mesothelioma. Georgia-Pacific and Union Carbide moved to strike the affidavits on the basis that they had already been dismissed from the litigation and their motions for summary judgment were no longer pending before the court. It also asked the court to strike plaintiffs' memorandum and attachments thereto from the record.
On March 1, 2010, Georgia-Pacific filed a motion to vacate the February 23, 2010 judgment dismissing plaintiffs' claims against it with prejudice because it indicated that the dismissal had been made pursuant to Article 1671, rather than in response to the court's granting of Georgia-Pacific's motion for summary judgment.
All of the motions filed by the parties were heard by the trial court on March 2, 2010. At the start of the hearing, Georgia-Pacific moved to vacate the February *331 23, 2010 judgment, the plaintiffs agreed the judgment should be vacated, and the trial court vacated the February 23, 2010 judgment. Thereafter, the court signed orders granting Georgia-Pacific and Union Carbide's motions for summary judgment. The court then heard plaintiffs' motion for a new trial on the granting of the summary judgments in favor of Georgia-Pacific and Union Carbide. Plaintiffs asked the court to consider Dr. Mark's affidavit and allow the parties to argue whether it created an issue of material fact in causing Harris' mesothelioma as to those defendants. The court denied the motion for new trial and refused to consider the late-filed affidavit of Dr. Mark. The court stated that it was convinced its ruling denying plaintiffs' motion to continue to get a properly signed and notarized affidavit by Dr. Mark at the January 19 hearing was proper. It further expressed its belief that both defendants were entitled to summary judgment because there was no proper evidence of specific causation in the record relating to Georgia-Pacific and Union Carbide on January 19, 2010, the date on which the court stated it had "heard" the motions for summary judgment. The court further stressed that even if it had considered Dr. Mark's affidavit, it did not contain a discussion of any dose response that would make these defendants liable, and concluded, therefore, that plaintiffs' evidence on the date of the summary judgment hearing, January 19, 2010, was insufficient to "carry the day" as to Georgia-Pacific and Union Carbide. The court also granted Georgia-Pacific and Union Carbide's motions to strike plaintiffs' supplemental memoranda and all supporting documents attached thereto.
In the order granting Georgia-Pacific's motion for summary judgment, signed by the trial court on March 2, 2010, the court stated that the motion had been considered on January 19, 2010. The court further stated that the motion was being granted on the basis of the memorandum in support thereof and the arguments of counsel and the comments of the court as set forth at both the January 19, 2010 and February 2, 2010 hearings.
In this appeal, plaintiffs contend that the trial court erred in: (1) illegally granting Georgia-Pacific a dismissal with prejudice under La. C.C.P. art. 1671; (2) granting Georgia-Pacific's motion for summary judgment, regardless of whether Dr. Mark's affidavit was considered; (3) failing to afford Dr. Mark's affidavit any weight; and (4) limiting Dr. Mark's testimony to anything more than the exclusion of an opinion that a "single thread" of asbestos can cause mesothelioma.

LAW AND DISCUSSION

Dismissal with Prejudice
In their first challenge, plaintiffs contend that the trial court illegally granted Georgia-Pacific a dismissal with prejudice under La. C.C.P. art. 1671. Plaintiffs point to the case of Northshore Regional Medical Center v. Parish of St. Tammany, 96-0717, p. 6 (La.App. 1st Cir.12/20/96), 685 So.2d 614, 617, wherein this court stated that a trial court lacks authority to act on a motion to dismiss without prejudice by dismissing the plaintiffs lawsuit with prejudice. Rather, the court may refuse to grant the dismissal except with prejudice, and if the plaintiff objects to the dismissal with prejudice, the motion to dismiss should be denied, and the case should proceed. Plaintiffs point out that prior to making the motion to dismiss the lawsuit pursuant to Article 1671, they specifically stated that if the court were only inclined to grant a dismissal with prejudice, they would proceed on the motions for summary judgment. However, the record reflects that immediately after defendants *332 moved to dismiss the lawsuit with prejudice, plaintiffs did not specifically object to the dismissal, and the trial court granted the motions.
Any procedural challenge to the dismissal of Georgia-Pacific from the litigation based on Article 1671 is moot, as pointed out by Georgia-Pacific, as it is entirely evident from the proceedings below that the trial court vacated the February 23, 2010 judgment dismissing the lawsuit with prejudice under Article 1671 and entered judgment dismissing plaintiffs' claims against Georgia-Pacific on the basis that Georgia-Pacific was entitled to summary judgment.
While acknowledging that the February 23, 2010 judgment has been vacated and is not on appeal, plaintiffs argue that the fact that the only thing that transpired at the January 19, 2010 hearing was a dismissal under Article 1671 is relevant to this appeal as to the timing of when the summary judgment was in fact granted. Plaintiffs submit that the motion for summary judgment was not heard or granted at the January 19, 2010 hearing because the trial court dismissed plaintiffs' claims against Georgia-Pacific on the basis of Article 1671. Plaintiffs assert that when the trial court realized its mistake and tried to recast its earlier ruling dismissing the case under Article 1671 (at either the February 2 or March 2 hearings), Dr. Mark's causation affidavit was in the record and should have been considered by the trial court prior to actually granting the motion for summary judgment.
We agree that the record reveals that Georgia-Pacific's motion for summary judgment was not actually heard by the trial court before granting the dismissal on January 19, 2010. However, we find nothing in the transcripts of the later hearings to indicate that Georgia-Pacific's motion for summary judgment was "heard." In fact, there was no hearing on the issue raised by Georgia-Pacific's motion for summary judgment, that is, whether plaintiffs could prove actual exposure to Georgia-Pacific asbestos-containing products. Plaintiffs do not contend that the failure to hold a hearing on the motion for summary judgment renders it fatally defective. Because we have concluded, infra, that plaintiffs were not required to produce Dr. Mark's affidavit to defeat Georgia-Pacific's motion for summary judgment, we pretermit discussion of plaintiffs' timing argument as it relates to the propriety of the trial court's granting of summary judgment in favor of Georgia-Pacific.

Summary Judgment Law
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. Granda v. State Farm Mutual Insurance Company, 2004-2012, p. 4 (La.App. 1st Cir.2/10/06), 935 So.2d 698, 701. Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). Summary judgments are reviewed on appeal de novo using the same criteria as the trial court in determining whether summary judgment is appropriatewhether there is a genuine issue of material fact and whether mover is entitled to judgment as a matter of law. Jones v. Estate of Santiago, 2003-1424, p. 5 (La.4/14/04), 870 So.2d 1002, 1006.
On a motion for summary judgment, the initial burden of proof is on the moving party. If, however, the moving party will not bear the burden of proof at trial on the matter before the court, the moving party's burden of proof on the motion is satisfied by pointing out to the court that there is an absence of factual support for one or *333 more elements essential to the adverse party's claim, action, or defense. Thereafter, the non-moving party must produce factual support sufficient to establish that it will be able to satisfy its evidentiary burden of proof at trial. Failure to do so shows that there is no genuine issue of material fact. La. C.C.P. art. 966(C)(2). Once the motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion. Babin v. Winn-Dixie Louisiana, Inc., 2000-0078, p. 4 (La.6/30/00), 764 So.2d 37, 40; see also La. C.C.P. art. 967(B). Any doubt as to a dispute regarding a genuine issue of material fact must be resolved against granting the motion and in favor of a trial on the merits. Fernandez v. Hebert, 2006-1558, p. 8 (La.App. 1st Cir.5/4/07), 961 So.2d 404, 408, writ denied, 2007-1123 (La.9/21/07), 964 So.2d 333.
A "genuine issue" is a "triable issue," that is, an issue on which reasonable persons could disagree. If, on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue. Jones, XXXX-XXXX at p. 6, 870 So.2d at 1006. In determining whether an issue is genuine, a court should not consider the merits, make credibility determinations, evaluate testimony, or weigh evidence. Fernandez, XXXX-XXXX at p. 8, 961 So.2d at 408.
A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. Anglin v. Anglin, 2005-1233, p. 5 (La.App. 1st Cir.6/9/06), 938 So.2d 766, 769. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is "material" for summary judgment purposes can only be seen in light of the substantive law applicable to the case. Dickerson v. Piccadilly Restaurants, Inc., 99-2633, pp. 3-4 (La.App. 1st Cir.12/22/00), 785 So.2d 842, 844.

Burden of Proof in a Mesothelioma Case
In this case, plaintiffs' action for damages is based on negligence. In determining whether to impose liability, the standard analysis employed is the duty/ risk analysis. In order for a plaintiff to recover and for liability to attach under a duty/risk analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiffs injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiffs injuries (the scope of liability or scope of protection element); and (5) actual damages (the damages element). Rando v. Anco Insulations Inc., XXXX-XXXX, 2008-1169, pp. 26-27 (La.5/22/09), 16 So.3d 1065, 1086.
To prevail in an asbestos case, a plaintiff must show, by a preponderance of the evidence, that he was exposed to asbestos from the defendant's products and that he received an injury that was substantially caused by that exposure. Rando, XXXX-XXXX at p. 31, 16 So.3d at 1088. Louisiana courts employ a "substantial factor" test to determine whether exposure to a particular asbestos-containing product was a cause-in-fact of a plaintiffs asbestos-related disease. Thus, in an asbestos case, the plaintiff must show he had a significant exposure to the product complained of to the extent that it was a substantial factor in bringing about the injury. Rando, XXXX-XXXX at p. 35, 16 So.3d at 1091.
*334 Because of the lengthy latency period between exposure to asbestos and manifestation of the disease, cause-in-fact is noted as the "premier hurdle" faced by plaintiffs in asbestos litigation. Rando, XXXX-XXXX at p. 31, 16 So.3d at 1088. Notwithstanding the difficulty of proof involved, a plaintiffs burden of proof against multiple defendants in a long latency case is not relaxed or reduced because of the degree of difficulty that might ensue in proving the contribution of each defendant's product to the plaintiffs injury. Rando, XXXX-XXXX at pp. 35-36, 16 So.3d at 1091. When multiple causes of injury are present, a defendant's conduct is a cause-in-fact if it is a substantial factor generating plaintiffs harm. Rando, XXXX-XXXX at p. 31, 16 So.3d at 1088.
In Rando, XXXX-XXXX at p. 35, 16 So.3d at 1091, the supreme court, in addressing the causation problem in asbestos-related disease cases, relied on the reasoning set forth in Borel v. Fibreboard Paper Products Corporation, 493 F.2d 1076, 1094 (5th Cir.1973), cert. denied, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974), an asbestosis case:
[I]t is impossible, as a practical matter, to determine with absolute certainty which particular exposure to asbestos dust resulted in injury to Borel. It is undisputed, however, that Borel contracted asbestosis from inhaling asbestos dust and that he was exposed to the products of all of the defendants on many occasions. It was also established that the effect of exposure to asbestos dust is cumulative, that is, each exposure may result in an additional and separate injury. We think, therefore, that on the basis of strong circumstantial evidence[,] the jury could find that each defendant was the cause in fact of some injury to Borel.
The Borel court also stated that "[w]hether the defendant's conduct was a substantial factor is a question for the jury, unless the court determines that reasonable men could not differ." Id.
In Rando, the supreme court then noted, that "[b]uilding upon this early observation [in Borel], Louisiana courts have employed a `substantial factor' test to determine whether exposure to a particular asbestos-containing product was a cause-in-fact of a plaintiff's asbestos-related disease." Rando, XXXX-XXXX at p. 35, 16 So.3d at 1091. Thus, in an asbestos case, the claimant must show he had significant exposure to the product complained of to the extent that it was a substantial factor in bringing about his injury. Id. Stated differently, the plaintiff must prove, by a preponderance of the evidence that: (1) his exposure to the defendant's asbestos product was significant, and (2) that this exposure caused or was a substantial factor in bringing about his mesothelioma (or other asbestos-related disease). See Rando, XXXX-XXXX at p. 38, 16 So.3d at 1092 (ultimately concluding with regard to cause-in-fact that there was "no manifest error in the trial court's [factual] determination [that] Rando proved by a preponderance of the evidence his exposure to asbestos was significant and [that] this exposure caused his mesothelioma." (Emphasis added.)). Lastly, the plaintiffs proof in this regard may be by direct or circumstantial evidence.[5]Rando, XXXX-XXXX at p. 33, 16 So.3d at 1089.
*335 In its motion for summary judgment, Georgia-Pacific urged that plaintiffs could not establish that Harris had sustained any exposure, much less a "significant exposure," to asbestos-containing products manufactured by it to such an extent that the exposure was a substantial factor in bringing about his injury. Plaintiffs contend that the trial court committed legal error in granting summary judgment on the basis of the lack of medical evidence to establish specific causation because Georgia-Pacific's motion raised no complex medical issues, but instead, questioned only whether Harris had been exposed to any asbestos-containing products manufactured by Georgia-Pacific. Plaintiffs argue that all they were required to do on the motion for summary judgment was to present evidence of Harris' significant exposure to asbestos-containing Georgia-Pacific products. Plaintiffs contend that Dr. Mark's affidavit or other medical opinion evidence was not required to defeat Georgia-Pacific's motion for summary judgment, as Georgia-Pacific's motion raised no complex medical issues therein, did not raise the issue of medical causation, and Georgia-Pacific did not even suggest that the testimony of an industrial hygienist or other medical professional was necessary to create a factual dispute regarding causation.
To prevail at trial, plaintiffs must first demonstrate by a preponderance of the evidence that Harris was exposed to asbestos from Georgia-Pacific's products. Georgia-Pacific's motion challenged plaintiffs' ability to demonstrate that Harris had been exposed to asbestos-containing Georgia-Pacific products. The testimony of Harris' co-workers, relied on by Georgia-Pacific in support of its motion, actually provided some evidence that Harris had been exposed to Georgia-Pacific's products while working as a sheetrock installer. In opposition to the motion, plaintiffs offered evidence of the timeline during which Harris was exposed to Georgia-Pacific's sheetrock finishing products, 1970-1980, and that all of the finishing products sold by Georgia-Pacific contained asbestos from the mid 1960s through at least 1973, and may have also contained asbestos through 1977, when Georgia-Pacific ceased manufacturing such products. Plaintiffs also offered evidence showing that Harris and his co-workers breathed in dust generated from the sheetrock finishing process.
We find the evidence offered by plaintiffs, while largely circumstantial, is sufficient to create a factual dispute as to whether Harris was exposed to and did inhale asbestos-containing Georgia-Pacific sheetrock finishing products, precluding the entry of summary judgment in favor of Georgia-Pacific on the issue of actual exposure.
Plaintiffs' remaining burden in a mesothelioma case is to demonstrate that Harris' mesothelioma was substantially caused by that exposure. Rando, XXXX-XXXX at p. 31, 16 So.3d at 1088. Medical science has proven a causal relationship between asbestos exposure and mesothelioma above background levels. Thus, asbestos exposure is a causative factor in producing the disease. McAskill v. American Marine Holding Company, 2007-1445, p. 7 (La. App. 4th Cir.3/4/09), 9 So.3d 264, 268. It is also established that mesothelioma can develop after fairly short exposures to asbestos, and that every "non-trivial" exposure to asbestos contributes to and constitutes a cause of mesothelioma. See Rando, XXXX-XXXX at p. 35, 16 So.3d at 1091; McAskill, XXXX-XXXX at pp. 7-8, 9 So.3d at 268. The causal link between asbestos exposure and mesothelioma contraction has been demonstrated to such a high degree of probability, while at the same time, few if any other possible causes have been identified, that a universal causal relationship has been recognized: *336 if one is diagnosed as having mesothelioma and that person was exposed to asbestos, that exposure is recognized to be the cause of the mesothelioma. Torrejon v. Mobil Oil Company, 2003-1426, p. 23 (La.App. 4th Cir.6/2/04), 876 So.2d 877, 892-893, writ denied, 2004-1660 (La.9/24/04), 882 So.2d 1125.
We agree with plaintiffs' assertion they were not required to come forward with medical causation evidence to defeat Georgia-Pacific's motion for summary judgment. Georgia-Pacific's motion for summary judgment simply did not raise the complex medical issue of specific causation that was ultimately relied on by the trial court in granting summary judgment. The motion challenged whether plaintiffs could demonstrate that Harris had been exposed to its asbestos-containing products. All of the evidence submitted by Georgia-Pacific in support of its motion related to the issue of whether Harris had in fact been exposed to Georgia-Pacific's products while doing sheetrock work. Georgia-Pacific did not argue in its motion that plaintiffs did not have expert medical testimony on the medical causation issue or that testimony from additional medical professionals was necessary to establish causation. Georgia-Pacific was well aware that plaintiffs had retained Dr. Mark, a practicing pathologist and professor at Harvard medical school who taught classes on asbestos-related lung diseases, as their medical causation expert.[6] It was only after the trial court revealed its inclination to limit Dr. Mark's testimony at the January 19, 2010 hearing that Georgia-Pacific began to question plaintiffs' ability to prove specific medical causation. However, the issue of specific medical causation had not been set forth in Georgia-Pacific's motion for summary judgment at the time it was considered by the trial court, and we find that the trial court clearly erred in granting summary judgment on an issue not raised in Georgia-Pacific's motion for summary judgment. See La. C.C.P. art. 966(E) (providing that a "summary judgment shall be rendered or affirmed only as to those issues set forth in the motion under consideration by the court at that time." (Emphasis added.)).
Whether a particular exposure constitutes a substantial contributing factor in the development of the disease of mesothelioma is a question of fact. While Georgia-Pacific may have made a bare assertion that plaintiffs could not demonstrate that Harris' exposure to Georgia-Pacific's products was a substantial contributing factor in the development of Harris' disease, Georgia-Pacific offered no evidence to show that the exposures were not medically significant or that there is some "safe" level of exposure to its products that had not been exceeded. Given the universally recognized causal connection between asbestos exposure and mesothelioma, coupled with the fact that Georgia-Pacific could not show that plaintiffs had not retained a medical causation expert, Georgia-Pacific's unsupported motion did not shift the burden to plaintiffs to demonstrate at the summary judgment stage that the exposures on which it relied were medically significant. See Coleman v. St. Tammany Parish School Board, XXXX-XXXX, 2008-1980, p. 6 (La.App. 1st Cir.5/8/09), 13 So.3d 644, 648 (the burden on the motion for summary judgment does not shift to the non-moving party until the mover has properly supported the motion and carried the initial burden of proof); Pugh v. St. Tammany Parish School *337 Board, 2007-1856, pp. 4-6 (La.App. 1st Cir.8/21/08), 994 So.2d 95, 98-100, writ denied, 2008-2316 (La.11/21/08), 996 So.2d 1113 (it is only after a motion for summary judgment has been made and properly supported that the burden shifts to the non-moving party).
We find that the evidence on the motion for summary judgment created a factual dispute as to whether Harris was exposed to, or did inhale or ingest, asbestos-containing Georgia-Pacific sheetrock finishing products. When this evidence is considered in light of the well-established medical and legal principles establishing the causal connection between asbestos exposure and mesothelioma, along with the absence of any evidence indicating that such exposures were medically insignificant, we find that a genuine issue of material fact exists as to whether the exposures were a substantial contributing cause of Harris' mesothelioma.
For the foregoing reasons, we find that the trial court erred in granting summary judgment in favor of Georgia-Pacific, and we reverse that judgment and dismissal of Georgia-Pacific from this litigation.

MOTION TO STRIKE
Georgia-Pacific joined in Sherwin-Williams' motion to strike a portion of Dr. Mark's testimony. On February 23, 2010, the trial court entered judgment granting Sherwin Williams' motion to strike, and plaintiffs challenge that ruling in this appeal. In a companion case decided this day, Robertson v. Doug Ashy Building Materials, Inc., 2010-1552 (La.App. 1st Cir.10/4/11), 77 So.3d 339, this court reversed the trial court's judgment granting Sherwin-Williams' motion to strike Dr. Mark's testimony. For the reasons set forth therein, the February 23, 2010 judgment granting Sherwin-Williams' motion to strike the testimony of Dr. Mark is reversed.[7]

CONCLUSION
Based on the foregoing, the March 9, 2010 judgment granting summary judgment in favor of Georgia-Pacific and the February 23, 2010 judgment granting the motion to strike are hereby reversed. The case is remanded for proceedings consistent with this opinion. All costs of this appeal are assessed to defendant/appellee, Georgia-Pacific.
REVERSED AND REMANDED.
McCLENDON, J., concurs and assigns reasons.
McCLENDON, J., concurs and assigns reasons.
While I question the majority's analysis regarding the shifting of the burden of proof on Georgia-Pacific's motion for summary judgment, I need not address the correctness of same, finding that there is a procedural defect that renders summary judgment improper. Specifically, Louisiana Code of Civil Procedure article 966 D requires that the "court shall hear and render judgment on the motion for summary judgment within a reasonable time." (Emphasis added.) Because a review of the record clearly shows that Georgia-Pacific's motion for summary judgment was never heard, nor was the request for a hearing waived, the grant of the motion for summary judgment was inappropriate.
The hearing on the motions for summary judgment filed by numerous defendants, including Georgia-Pacific, was set *338 for January 19, 2010.[1] At the hearing, the plaintiffs moved for a judgment of dismissal of all claims against Georgia-Pacific and Union Carbide without prejudice pursuant to LSA-C.C.P. art. 1671.[2] Counsel for the plaintiffs then stated, "If the court is inclined to deny the request for dismissal without prejudice, then we'll withdraw the request and pursue [sic] with the motions, your Honor, the remaining motions." Counsel for Georgia-Pacific responded by stating that after an appearance, the court may refuse to grant a judgment of dismissal pursuant to LSA-C.C.P. art. 1671 except with prejudice and that counsel for plaintiffs had admitted that if plaintiffs lost their expert, they could not prove their case. Georgia-Pacific then moved for a dismissal with prejudice.[3] Union Carbide echoed Georgia-Pacific's statements and also requested dismissal with prejudice. The trial court then granted the motions of Georgia-Pacific and Union Carbide "to be dismissed with prejudice." Thereafter, a judgment was signed by the trial court granting Georgia-Pacific's motion to dismiss plaintiffs' claims with prejudice and indicating that the dismissal had been made pursuant to LSA-C.C.P. art. 1671.[4]
At the February 2, 2010 hearing, when plaintiffs' counsel was discussing their motion for new trial on the granting of the motion to dismiss Georgia-Pacific and Union Carbide with prejudice, the trial court indicated that at the January hearing it denied plaintiffs' request to continue the summary judgment hearings and that it went forward with the summary judgment hearings. Counsel for the plaintiffs reminded the trial court that plaintiffs stated at that time that if the court was not willing to dismiss the two defendants without prejudice, plaintiffs wished to withdraw that request and proceed to trial. Counsel stated that at no time did plaintiffs request dismissal with prejudice and also objected to same. After further argument by counsel, the trial court stated, "I did not act under 1671. I granted motions for summary judgment by Union Carbide and Georgia-Pacific and dismissed with prejudice both of those entities. That's what happened on January the 19th."
Although the trial court may have stated otherwise, the record fails to establish that there was ever a hearing on Georgia-Pacific's motion for summary judgment or that plaintiffs were allowed to argue in opposition to same. Nor do I find that the hearing on the motion was waived since plaintiffs clearly stated that they were prepared to go forward if the motion to dismiss without prejudice was not granted. Because the record shows that the plaintiffs did not waive their right to be heard on the motions for summary judgment and because the record does not reflect that a hearing was ever held on Georgia-Pacific's motion for summary judgment, I agree that that summary judgment was incorrectly *339 granted. Therefore, I respectfully concur.
NOTES
[1] We recognize that the plaintiffs' petition names Doug "Ashby" as a defendant. However, the record reveals that the correct spelling is "Ashy."
[2] In two companion cases also rendered this date, plaintiffs separately appealed the trial court's granting of summary judgment in favor of Union Carbide (Robertson v. Doug Ashy Building Materials, 2010-1551 (La.App. 1st Cir.10/4/11), 77 So.3d 360) and the court's granting of Sherwin-Williams' motion to strike the testimony of its expert and granting of summary judgment in favor of Sherwin-Williams (Robertson v. Doug Ashy Building Materials, 2010-1552 (La.App. 1st Cir.10/4/11), 77 So.3d 339). On December 3, 2010, this court denied the defendants' motion to consolidate the related appeals, but ordered that the appeals be placed on the same docket and assigned to the same panel. Robertson v. Doug Ashy Building Materials, 2010-1552 (La.App. 1st Cir.12/3/10)(unpublished action).
[3] In its memorandum in support of its motion to strike the opinion of Dr. Mark, Georgia-Pacific noted that its motion for summary judgment established that plaintiffs cannot prove that Harris ever worked with any asbestos-containing product manufactured by it. Georgia-Pacific urged that plaintiffs' failure to offer actual evidence of Harris' exposure to a Georgia-Pacific product rendered Dr. Mark's opinion moot; however, they argued, even if there was some exposure to its products, Dr. Mark's opinion that "every exposure" to asbestos contributed to Harris' disease should be stricken because it is junk science and patently insufficient to carry plaintiffs' burden on causation.
[4] The record reflects that the motions were filed by facsimile transmission on January 29, 2010, and the originals were filed into the record on February 2 and 3, 2010.
[5] A fact established by direct evidence is one which has been testified to by witnesses as having come under the cognizance of their senses. Rando, XXXX-XXXX at p. 33, 16 So.3d at 1090. Circumstantial evidence, on the other hand, is evidence of one fact or a set of facts, from which the existence of the fact to be determined may reasonably be inferred. Id.
[6] For a discussion of Dr. Mark's qualifications and causation opinion, see the companion case decided this day, Robertson v. Doug Ashy Building Materials, Inc. at docket number XXXX-XXXX.
[7] Based on our ruling, all issues relating to the failure of the trial court to grant a continuance or a new trial so that a properly signed and notarized copy of Dr. Mark's affidavit could be obtained and considered are moot.
[1] The hearing on the motion to strike a portion of the testimony of Dr. Eugene Mark was also set for that date.
[2] Louisiana Code of Civil Procedure article 1671 provides:

A judgment dismissing an action without prejudice shall be rendered upon application of the plaintiff and upon his payment of all costs, if the application is made prior to any appearance of record by the defendant. If the application is made after such appearance, the court may refuse to grant the judgment of dismissal except with prejudice.
[3] However, plaintiffs also asserted in their opposition to the motion for summary judgment that causation was not properly raised by defendant, merely exposure. The trial court had previously granted Sherwin-Williams's motion to strike a portion of Dr. Mark's opinion testimony.
[4] This judgment was later vacated by the trial court.